**SAN LUIS TRAILS ASSOCIATION,
Plaintiff-Appellant,**

v.

**E.M. HARRIS BUILDING CO., INC.,
Defendant-Respondent.**

**No. 50139.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 4, 1986.

Rehearing Denied March 11, 1986.

---

Susan H. Mello, Clayton, for plaintiff-appellant.

Francis J. Vatterott, St. Ann, for defendant-respondent.

REINHARD, Judge.

Plaintiff, a homeowners association, appeals from the granting of defendant's motion to dismiss plaintiff's second amended petition for damages based on breach of an implied warranty. We affirm.

Plaintiff first filed a two-count petition against defendant, the developer, designer and builder of a residential subdivision in Jefferson County, seeking to recover in excess of $100,000 which plaintiff had expended to replace and repair private streets within the subdivision. Count I was premised on negligence, while in Count II strict liability was asserted. Defendant filed a motion to dismiss for failure to state a cause of action. The trial court sustained defendant's motion and granted plaintiff 20 days to file amended pleadings. No appeal was taken from that dismissal.

Plaintiff's amended petition contains the following allegations:

1. That at all times material hereto, Plaintiff, SAN LUIS TRAILS ASSOCIATION, was a not-for-profit corporation, organized and existing pursuant to the laws of the State of Missouri.

2. That at all times material hereto, Defendant, E.M. HARRIS BUILDING CO., INC., was a corporation organized and existing pursuant to the laws of the State of Missouri, with a principal office and registered agent in Jefferson County, Missouri.

3. That at all times material hereto, San Luis Trails was a residential subdivision, partly located in St. Louis County but with Plats 4, 5, and 6 located in Jefferson County and further, that Plats 4, 5, and 6 including lots, common area, and streets, were developed and constructed by Defendant and its agents, with construction commencing in 1978 and the same still being under development.

4. That from 1978 to the present, Defendant and its agents sold to individuals, real estate, buildings, and appurtenances thereto, located in San Luis Trails subdivision, Plats 4, 5, and 6, for the purpose of developing a community of single-family homes.

5. That Plaintiff was incorporated and set up by Defendant and its agents to hold title to the common area and maintenance of streets located in Plats 4, 5, and 6 of San Luis Trails for the bene-

fits and use of the Association's membership, the individual property (lot) owners of Plats, 4, 5, and 6.

6. That said streets were never dedicated and accepted by Jefferson County as public roads, and therefore, remained under the sole control and maintenance of Plaintiff for the benefit and use of its members.

7. That Defendant knew or should have known by using ordinary care that the Plaintiff's membership, all the property owners of Plats 4, 5, and 6 would use the streets located in Plats 4, 5, and 6 as their primary access to and from their respective homes; and, Defendant impliedly warranted that these streets were reasonably fit for such a use; and, that Defendant further impliedly warranted that the streets were constructed in a skillful and workmanlike manner and were free from defects in workmanship and materials.

8. That Plaintiff, through its property-owner membership, reasonably relied on the skill and judgment of Defendant as to the suitability of the streets located in Plats 4, 5, and 6 for normal use and also as to the manner in which the streets were constructed.

9. That, in fact, the subdivision streets were not suitable for use as subdivision streets, were not constructed in a skillful and workmanlike manner, and were not free from defects in workmanship and materials in that from 1980 to the present time the streets have deteriorated to the extent that they have become unsafe for driving, person, and property, and are in constant need of major repair.

10. That Plaintiff has demanded Defendant replace and/or make the necessary repairs to the subdivision streets, but Defendant has refused to do so.

11. That as a direct result of the unskillful and unworkmanlike manner in which the streets were constructed and Defendant's refusal to correct the resulting condition, Plaintiff and its membership have been damaged in the amount of One Hundred Thousand Dollars ($100,-000.00) for the cost of having subsequent repair work done on the subdivision streets.

Defendant filed a motion to dismiss the amended petition for failure to state a cause of action. The trial court sustained defendant's motion, and designated the dismissal as a final order for purposes of appeal.

On appeal plaintiff asserts that the amended petition stated a claim under an implied warranty theory, and "when properly construed stated a claim for misrepresentation" as well.

█ On review of the trial court's dismissal of a petition, our duty is to determine if the facts pleaded and reasonable inferences to be drawn from the allegations, when viewed in the light most favorable to the plaintiffs, demonstrate any basis for relief. We must accept as true all facts averred in the petition, construe all averments liberally and favorably to the plaintiffs and determine whether they invoke principles of substantive law upon which relief may be granted. *Chubb Group of Insurance Companies v. C.F. Murphy & Associates, Inc.*, 656 S.W.2d 766, 770 (Mo.App.1983).

With this in mind we examine the concept of implied warranty as it relates to real estate. In *Smith v. Old Warson Development Company*, 479 S.W.2d 795 (Mo. banc 1972) the Missouri Supreme Court allowed an original purchaser of a new home to recover from a builder/vendor for damages resulting from latent structural defects on the basis of a common law implied warranty of habitability or quality. The court noted:

Although considered to be a 'real estate' transaction because the ownership to land is transferred, the purchase of a residence is in most cases the purchase of a manufactured product—the house. The land involved is seldom the prime element in such a purchase, certainly not in the urban areas of the state. The structural quality of a house, by its very nature, is nearly impossible to determine

by inspection after the house is built, since many of the most important elements of its construction are hidden from view. The ordinary 'consumer' can determine little about the soundness of the construction but must rely upon the fact that the vendor-builder holds the structure out to the public as fit for use as a residence, and *of being of reasonable quality.*

\* \* \* \* \* \*

Common sense tells us that a purchaser under these circumstances should have at least as much protection as the purchaser of a new car, or a gas stove, or a sump pump, or a ladder.

*Id.* at 799.

*Relaxing the caveat emptor rule in this limited area* would not require a builder-vendor to construct a perfect house as the test would be one of reasonableness of quality. (emphasis ours).

*Id.* at 801.

The remedy established in *Old Warson* was further defined in *Crowder v. Vandendeale,* 564 S.W.2d 879 (Mo. banc 1978), where the court stated:

The language of *Old Warson* has given rise to some uncertainty as to whether the action of implied warranty allowed in that case was grounded in contract or in tort. ... after further consideration of the nature of recovery for deterioration of a house, as contrasted with the kind of recovery involved in *Keener* [*v. Dayton Elec. Mfg. Co.,* 445 S.W.2d 362 (1969)] (damages for death caused by faulty product), we have concluded that the liability imposed for mere deterioration or loss of bargain resulting from latent structural defects is contractual, and that the recovery allowed in *Old Warson* is to be justified on that basis.

*Id.* at 880–881. The court further held that traditional contractual defenses were available "under proper circumstances", and that the right of action was limited to "the first purchaser." *Id.* at 881.

■ Defendant argues that plaintiff did not allege privity of contract or that it was a "first purchaser" within the meaning of *Crowder.* However, we do not reach these questions because we have concluded that the implied warranty exception to the rule of *caveat emptor* in real estate transactions does not extend beyond latent structural defects in a house.

This issue appears to be one of first impression in Missouri, but was considered by the Florida Supreme Court in *Conklin v. Hurley,* 428 So.2d 654 (Fla.1983). In that case the owners of vacant waterfront lots sought to recover damages from a subdivision developer after a seawall which abutted the lots collapsed. The Florida Court quoted *Old Warson,* then noted:

Common threads running through all the decisions extending implied warranties to purchasers of new houses are the inability of the ordinarily prudent homebuyer to detect flaws in the construction of modern houses and the chattel-like quality of such mass-produced houses. In commentaries frequently referred to in the cases extending implied warranties to purchasers of new homes legal scholars have pointed to these factors as prime reasons for the inequity of applying caveat emptor to such sales. These were certainly the concerns of this Court when it adopted as its own the decision of the Fourth District Court of Appeals in *Gable.* [*v. Silver,* 258 So.2d 11 (1972)].

Returning to the case at hand, we fail to see how the policy upon which *Gable* and its kindred were based would be furthered by application here. None of the petitioners purchased a dwelling from Carriage Hill. The seawall was not part of a completed structure. Indeed, each of the petitioners bought what was essentially an empty lot, the only improvement being the defective seawall. Purchasers of such relatively unimproved realty may more reasonably be expected to inspect the property knowledgeably before purchase and may more likely be able to bargain for an express warranty than those who buy as complex a structure as a modern home.

*Id.* at 658. The dissenting judge, who viewed the seawalls as an improvement which constituted "an integral part of the structure [of a dwelling]" or as immediate support for such a structure, stated:

> I recognize that there are several common improvements made to residential property which have no relation to the fitness or habitability of a home such as landscaping, roads, and fences. I would not extend implied warranties to improvements which are not an integral part of the real estate purchase or are not supportive to the residence or proposed residence.

*Id.* at 661. In a subsequent Florida case, closely analogous to the one at bar, a homeowners association sought to recover the cost of repairing "roads and drainage areas and the cost of building a wooden footbridge shown in the plans but not furnished by the developer." *Port Sewall Harbor and Tennis Club Owners Association, Inc. v. First Federal Savings and Loan Association of Martin County*, 463 So.2d 530, 531 (Fla.App.1985). The court concluded:

> The foot bridge in question and the defective work complained of involved roads and drainage in the subdivision and did not pertain to the construction of homes or other improvements immediately supporting the residences. That is the extent of the application of implied warranties to first purchasers of residential real estate in Florida. The Supreme Court of Florida completely reviewed the extent of the application of implied warranty to real property in the *Conklin* case and under strong urging to do so declined to further extend that theory of liability. Therefore, the trial judge was correct in his conclusion that *Conklin* precluded liability for the defects complained of on the theory of implied warranty.

*Id.*

We believe that these Florida decisions are in harmony with the concept of implied warranty as developed in Missouri. As previously noted, the court in *Old Warson*

referred to "relaxing the *caveat emptor* rule in this *limited area*", while *Crowder* restricted the remedy by applying contract principles and requiring that the plaintiff be a "first purchaser." Plaintiff here has not alleged deterioration of a house or an improvement outside the house which is an integral part of the structure or immediately supports it, and cannot recover damages based on implied warranty.

Because dismissal was improper if the amended petition, liberally construed, invoked any substantive principal of law which would entitle plaintiff to relief, we consider whether the petition states a claim for negligent or fraudulent misrepresentation. *See, Chubb Group of Insurance Companies*, 656 S.W.2d at 783–785.

We find nothing in the amended petition which avers that a representation was made to plaintiff. The petition does contain, in paragraph 7, an allegation that defendant "impliedly warranted that the streets were constructed in a skillful and workmanlike manner and were free from defects in workmanship and materials." In *French v. Jochens*, 642 S.W.2d 677, 679 (Mo.App.1982), we noted: "[u]nder Rule 55.15, all averments of fraud must state with particularity the circumstances constituting fraud, although malice, intent, or other states of mind may be averred generally." Plaintiff here has failed to allege that something was represented, as opposed to implied by the common law; nor has it set forth the circumstances surrounding the alleged misrepresentation, including when and to whom it was made.

Judgment affirmed.

DOWD, P.J., and CRIST, J., concur.