**Rufus SOLTER, Appellant,**

v.

**P.M. PLACE STORES CO., INC., and Mattingly Stores, Inc., Respondents.**

**No. WD 39556.**

Missouri Court of Appeals,
Western District.

April 5, 1988.

John T. Kay, California, for appellant.

Zachary T. Cartwright, California, for respondents.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

This suit was brought by appellant Solter against his former employer, respondent, for non-payment of wages and for penalties and interest. The principal issue in the case is whether an employer may offset a debt owed it by the employee against wages otherwise due the employee without incurring the penalties provided in § 290.110, RSMo 1986.[1]

The relevant facts are that Solter was employed by P.M. Place Stores, and its predecessor, Mattingly Stores, from 1977 until January 2, 1984 when he was discharged for generally unacceptable performance. In 1980, Solter had borrowed $2500.00 from the employer giving his promissory note with interest at 10%. Commencing in 1982, the employer began deducting $50.00 each pay period from Solter's wages to retire the note. It appears to have been undisputed that in January, 1984, the balance Solter owed on the note was $1579.59. Also as of January, 1984, Solter was owed pay for two days work and whatever accrued benefits for severance and vacation the employment agreement included.

On January 12, 1984, the employer wrote to Solter informing him of the amount they

---

1. All statutory references are to RSMo 1986.

calculated to be due him in wages, and also making demand on him to pay the balance due on the note, $1579.59. That sum was greater than the amount of Solter's unpaid wages and any termination benefits he was entitled to receive. Solter did not answer the payment request but he did write the employer demanding payment of his wages. The matter remained at an impasse until this suit was filed in January, 1985.

The case was tried to the court which found Solter entitled to $646.80 for two weeks severance pay and two days worked and $744.37 for accrued vacation pay, the amount for severance pay and days worked being adjusted for payroll taxes. The court also found that Solter owed P.M. Place Stores $1579.59 principal and $594.52 interest on the note. The result was a net judgment against Solter for $782.94 and costs.

In the most significant point, Solter claims the court erred in failing to assess penalties against the employer under § 290.110 for its refusal to pay Solter the wages he was entitled to receive. He argues that the loan was a separate transaction unrelated to his employment and that an employer cannot escape the penalty for non-payment of wages by setting up an offset as was done here.

■ The question is ruled by *McLaurin v. Frisella Moving and Storage Co.*, 355 S.W.2d 360 (Mo.App.1962). In *McLaurin*, the offsetting debt was an employment agency fee which the employer paid on the strength of the employee's promise to repay the amount to the employer. After discharge, the employee brought suit for unpaid wages and the statutory penalty, as did appellant here. On appeal by the employee, the court explicitly held an employer is entitled to apply the wages due a discharged employee against an indebtedness due from the employee and not there-

by incur any penalty under the statute. The trial court was correct in disallowing Solter's claim against respondent for the statutory penalty of sixty days additional wages. We rule the point against Solter.

Appellant next contends the trial court erred in computing his employment termination benefits in that he did not receive an allowance of pro-rated vacation pay for the period from October 1, 1983, the anniversary of his employment, to January 2, 1984, the date his services were terminated.

■ Respondent's employee handbook was introduced in evidence. With regard to vacation pay, the handbook states that when an employee is discharged, he is entitled to unused vacation pay pro-rated to the date of termination. The president of respondent testified that such was the company's policy and that Solter was entitled to be paid for his unused vacation time. There was no evidence to the contrary. It must be assumed the trial judge overlooked the item in his computation. We are obligated to revise the judgment in this detail because the order denying the claim for unused vacation allowances is not supported by any substantial evidence and is contrary to all the evidence in the case. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We are not, however, able to grant Solter the amount of vacation pay he seeks.

Solter claimed his unused vacation pay was in the amount of $279.34. He does not indicate how he arrived at this figure. He was entitled to a two week vacation a year. The three months from October to January amount to one-fourth of the year, which would entitle Solter to an equal proportion of two weeks' pay. His wages at the time were $744.37 for two weeks. The correct amount of vacation pay allowance is one-fourth of $744.37 or $186.09. The judgment in favor of Solter should be increased by this amount.[2]

2. Respondent contends that *Doores v. Intercontinental Engineering–Manufacturing Corp.*, 670 S.W.2d 65 (Mo.App.1984), is authority for disal-

lowance of any award for vacation pay. As we read that case, and *Monterosso v. St. Louis Globe–Democrat Publishing Co.*, 368 S.W.2d 481

Solter next claims his allowance of two days pay and two weeks severance pay should have been in the gross amount of $893.35 rather than the net allowance of $646.80. The difference is accounted for by deductions for federal and state income taxes and the monthly amount applied to the loan. In the first place, it is obvious that Solter can demonstrate no prejudice because his loan account was credited with the payment and the income taxes accrued to his benefit, either by reducing the amounts he would otherwise owe the taxing authorities or by increasing his tax refunds. Moreover, the respondent introduced in evidence Solter's previous payroll records which showed identical deductions routinely made for Solter's account. The point has no merit.

Solter next claims the court erred in failing to allow prejudgment interest on his claims for wages and employment termination benefits.

Prejudgment interest is the measure of damages for failure to pay money when payment is due. *Ehrle v. Bank Building & Equipment Corp. of America,* 530 S.W.2d 482, 497 (Mo.App.1975). As a general rule, interest is not allowable prior to judgment upon an unliquidated claim for the reason "that where the person liable does not know the amount he owes he should not be considered in default because of his failure to pay." *Fohn v. Title Insurance Corp.,* 529 S.W.2d 1, 5 (Mo. banc 1975). An amount is sufficiently liquidated for the purpose of allowing prejudgment interest thereon if the amount is readily ascertainable by computation or by determination according to a recognized standard. *Ehrle,* 530 S.W.2d at 496. Where a claim is liquidated or where the defendant contests liability and not the amount of damages, the interposition of a counterclaim or setoff does not convert the liquidated demand into an unliquidated one or preclude recovery of prejudgment interest even though the counterclaim or setoff places the amount payable in doubt. *Id.* at 497; *Ohlendorf v. Feinstein,* 670 S.W.2d 930, 935 (Mo.App.1984). It is the character of the claim and not of the defense that determines whether an amount sued for is liquidated. *Burger v. Wood,* 446 S.W.2d 436, 444 (Mo.App.1969). Interest may be allowed to a plaintiff even though it is found he is not entitled to the full amount of his demand. *See Schmidt v. Morival Farms, Inc.,* 240 S.W.2d 952 (Mo.1951). According to 47 C.J.S. *Interest & Usury* § 21 (1982), where the amount of a demand is sufficiently certain to justify the allowance of interest thereon, the existence of a setoff or counterclaim will not prevent the recovery of interest on the *balance* of the demand unless plaintiff's claim is less than the award to defendant on his counterclaim.

Solter's claim in this case was liquidated because he asked for a fixed amount and the amount was computed by his standard of pay obviously known to both parties. Solter would therefore have been entitled to receive prejudgment interest had any balance been due him after the setoff of respondent's counterclaim. Since Solter is owed no balance, the denial of prejudgment interest was proper.

Solter next complains that the trial court erred in awarding respondent $594.52 in prejudgment interest. The trial judge calculated the interest on the $1579.59 principal of the promissory note at 10% per annum, compounded annually on July 15. The note upon which the judgment is based provides:

interest thereon at 10 percent per annum from July 14, 1980 until paid, interest payable on demand and if interest be not paid when due, same is to become part of the principal and the total sum to bear 10 percent interest.

(Mo.), *cert. denied,* 375 U.S. 908, 84 S.Ct. 198, 11 L.Ed.2d 147 (1963), on which *Doores* relies, those cases merely hold that vacation pay does not constitute wages for the purpose of invoking the penalty set out in § 290.110. The cases are not authority for denial of vacation pay claims where supported by proof of the employment agreement.

The trial court found and the evidence supports the finding that respondents made demand for full payment of the note on January 13, 1984. The judge then calculated interest due on the balance as of July 15, 1984 and added that amount to the principal, repeating these computations for the succeeding years to May, 1987, the date of trial.

The note does not provide for the annual compounding of interest but for interest at "10 percent per annum ... payable on demand and if interest be not paid when due, same is to become part of the principal." The words "per annum" simply designate the rate of interest and do not denote any agreement to pay interest annually. *First National Bank v. Kirby*, 175 S.W. 926, 929 (Mo.1915), *Frye v. Shepherd*, 173 Mo.App. 200, 205, 158 S.W. 717, 719 (1913). Interest was payable on demand. Some demand for payment was obviously made in October 1982 but the record is not clear on the specifics of that demand. If interest was demanded at that time then any accrued interest not paid should have been added to the principal balance. If, as the trial judge found, the demand for full payment was not made until January 13, 1984, then no interest should have been added to principal until that time.

Using simple interest at the rate of 10% per year calculated on the sum of $1579.00, which included interest to January 13, 1984, the judgment should have added interest of $315.80 for two years to January 13, 1986 and $52.63 to May, 1986, or a total of $368.43 in place of the $594.52 set out in the judgment. The judgment in favor of respondent should be reduced by the difference, $226.09.

Finally, Solter claims the trial court erred in taxing costs to appellant because he should have been the prevailing party. Section 514.060 provides:

In all civil actions ..., the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law.

Each party prevailed on certain issues in this case and each party lost on certain issues. The net result, however, was a money judgment to respondent's favor.

Where a set-off or counterclaim has been filed and allowed ..., the party in whose favor final judgment is rendered will be entitled to costs.... In other words, plaintiff is entitled to costs if he has judgment for an amount in excess of the set-off or counterclaim allowed. By parity of reasoning, if the amount allowed as set-off or counterclaim exceeds the amount allowed on plaintiff's demand, defendant is entitled to costs.

*Ozias v. Haley*, 141 Mo.App. 637, 641, 125 S.W. 556, 557 (1910) (*quoting* Cyclopedia of Law & Procedure, vol. 11, p. 31). The trial court did not err in its assessment of costs.

The judgment is affirmed in part and reversed in part. The cause is remanded with directions to enter a revised judgment in favor of appellant in the amount of $1577.26 on his petition and in favor of respondent on its counterclaim in the amount of $1948.02. Costs on appeal are apportioned equally between appellant and respondent.

All concur.