Lawrence NEWFELD, et al.,
Plaintiffs–Respondents,

v.

CHEMICAL DYNAMICS, INC. d/b/a
Schultz Company,
Defendant–Appellant.

Nos. 56493, 55999.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 12, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 17, 1990.

Application to Transfer Denied
March 13, 1990.

Carroll J. Donohue, Mark G. Arnold, Husch, Eppenberger, Donohue, Carnfeld & Jenkins, St. Louis, for defendant-appellant.

Edward P. McSweeney, Thomas C. Simon, Padberg, McSweeney, Slater & Merz, St. Louis, for plaintiffs-respondents.

CRANDALL, Judge.

Defendant, Chemical Dynamics, Inc. (Chemical), d/b/a Schultz Company, appeals from the judgment, which awarded back rent plus prejudgment interest in the total amount of $571,262.68 to plaintiffs, Lawrence Newfeld, Frieda Newfeld, and Harry Schultz. We affirm as modified.

The instant case was court-tried upon a stipulation of facts with joint exhibits. The ultimate issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *Schroeder v. Horack*, 592 S.W.2d 742, 744 (Mo. banc 1979).

A summary of the stipulated facts indicates that Chemical entered into a lease with the original owners of the property for a term of five years beginning March 1, 1968 with an option to renew for an additional five year term at an increased monthly rental. The lease also contained a purchase option and the following holdover provision: *"Holding Over:* If Lessee holds over after termination of this Lease, Lessee shall be deemed a month to month tenant and liable for single rent during the

first holdover month, but for double rent thereafter." The lease was recorded.

In November 1970, Chemical assigned the lease to Lawrence Newfeld with the consent of the original owners. In *Chemical Dynamics, Inc. v. Newfeld*, 728 S.W.2d 590, 591–592 (Mo.App.1987), prior litigation which arose as a result of the lease assignment, the lease assignment was styled "Bill of Sale" and provided in pertinent part:

For and in consideration of a loan to us in the sum of Twenty–One Thousand Four Hundred Ninety–Two Dollars and Thirty–Eight cents ($21,492.38), made to us this date by Lawrence Newfeld to protect our creditors and stockholders by preventing the physical closing of our doors and the eviction by the Sheriff of St. Louis County, who appeared on our premises this date with a court order demanding immediate satisfaction of a judgment of the landlord for unpaid rent in said amount, and being unable to meet the demand, we, Schultz Company, hereby secure payment of our note this date to Lawrence Newfeld, by assigning to him full title to our lease, and we agree to rent the building hereafter from him on a month to month basis, at the monthly rent specified in said lease, surrendering to him all provisions and benefits of the lease.

The assignment provided that Lawrence Newfeld "assume all the obligations and covenants of said lease and payments to be made thereunder, except that this assignment shall not operate to release [Chemical] from the obligations in the lease...." The assignment was recorded. From March 1, 1968 to April 30, 1973, Chemical paid monthly rent of $2,937.08 to the original owners in accordance with the lease provision for rent. In January 1973, pursuant to the lease, Lawrence Newfeld renewed the lease for another five year period. From May 1, 1973 to September 30, 1973, Chemical paid monthly rentals of $3,230.78, as determined by the renewal provision in the lease, to the original owners of the leased property.

On October 1, 1973, Lawrence Newfeld and Frieda Newfeld, exercised the option to purchase the leased premises. The general warranty deed from the original owners to the Newfelds specified that the property was conveyed "Subject to Lease to Assignee [Lawrence Newfeld] of Schultz Shoe Company, Inc. [Chemical]." In January 1974, Lawrence and Frieda Newfeld executed a quit claim deed to themselves and Harry Schultz. From October 1, 1973 to May 31, 1987, Chemical remained on the premises and continued to pay $3,230.78 to the Newfelds and later to the Newfelds and H. Schultz. The Newfelds and H. Schultz returned Chemical's checks for June through October 1987.

For the years 1980 through 1985 Chemical paid the real estate taxes for the premises in accordance with the lease. From March 1, 1979 through March 1, 1988, the Newfelds and H. Schultz paid the insurance premiums on the property. On November 1, 1979, Lawrence Newfeld sent Chemical a letter stating:

For reasons unknown to me, you have to date not seen fit to honor the rental arrangements required by my letter of December 5, 1978, and you should not consider the fact that I have not yet instituted legal action against the Schultz Company to constitute any waiver of my rights as the owner of this building.

The real estate taxes and penalties for the tax year 1979 and for the tax year 1986 were $7,029.48 and $13,082.01, respectively. In 1980, the Newfelds and H. Schultz instituted this rent and possession action against Chemical.

The trial court found that Chemical had occupied the premises as a holdover tenant since March 1, 1978. The trial court found that, under the terms of the 1968 lease, Chemical was liable to the Newfelds and H. Schultz for back rent of $3,230.78 per month for the period March 1, 1978 to May 31, 1987, in the amount of $355,385.80, plus interest of $215,876.88, for a total of $571,-262.68.

In its first point, Chemical asserts that the trial court erred in finding that, as a holdover tenant, it was liable to the Newfelds and H. Schultz for double rent. It

argues that it had no contractual obligations to them under the 1968 lease.

In 1968, the execution of the lease between Chemical and the original owners of the leased property gave rise to a contractual relationship between Chemical and the original owners, termed privity of contract. Because the lease was also a conveyance of an estate in land, the lease created a privity of estate between Chemical and the owners. *See* Schoshinski, R., American Law of Landlord and Tenant 532 (1980). Chemical's contractual obligations to the original owners were determined by the 1968 lease.

In 1970, Chemical assigned its lease with the original owners to Lawrence Newfeld with the owners' consent. The assignment of the lease to Lawrence Newfeld was outright and unconditional. *See Chemical Dynamics*, 728 S.W.2d at 594. The assignment was titled "Bill of Sale" and granted to Lawrence Newfeld "all provisions and benefits of the lease." *Id.* at 592. When Chemical assigned the leasehold, the privity of estate between Chemical and the original owners was destroyed and a new privity of estate was created between the owners and, the assignee, Lawrence Newfeld. *See* Schoshinski, at 559. Chemical and the owners were still in privity of contract, however; and Chemical remained liable on the terms of the 1968 lease. *See Id.*, at 559–560. After the assignment, Chemical continued to pay rent to the original owners in accordance with the 1968 lease.

In January 1973, Lawrence Newfeld renewed the lease with the original owners for another five year period, as provided by the 1968 lease. The obligations between the original owners, Lawrence Newfeld, and Chemical remained the same as under the first five year term. Chemical paid rent, increased pursuant to the renewal provision of the 1968 lease, to the original owners.

■ In October 1973, Lawrence Newfeld and Frieda Newfeld exercised the option to purchase which Lawrence Newfeld had been assigned when he was assigned the 1968 lease. Upon the creation of a leasehold interest in the property, the original owners retained a reversion, a non-posses-

sory interest in fee simple. *See* Schoshinski, at 539. Because at the time the Newfelds acquired the reversion from the original owners Lawrence Newfeld also held the leasehold estate, a merger of the two estates occurred. Where the greater and lesser estate meet in the same person and in the same right, the lesser estate is immediately annihilated. *Reed v. Inness*, 102 S.W.2d 711, 716 (Mo.App.1937). In 1973, the leasehold estate, as between Lawrence Newfeld and the original owners, was therefore extinguished; and the 1968 lease, as between Lawrence Newfeld and the original owners, terminated.

The question then is what effect did the Newfelds' purchase of the property have on Chemical's obligations under the 1968 lease? A lease is a species of contract that creates an estate in the land. *St. Louis Terminals Corporation v. City of St. Louis*, 535 S.W.2d 593, 596–597 (Mo.App. 1976). *St. Louis Terminals* recognizes the dual nature of a lease: it is both a contract and a conveyance.

■ In the present action, Chemical had contractual obligations under the 1968 lease to the original owners. These contractual obligations were not extinguished by Chemical's assignment of the lease to Lawrence Newfeld in 1970, because Chemical remained in privity of contract with the original owners. In prior litigation between the same parties, we held that Lawrence Newfeld had accepted the assignment of the lease in return for a loan to Chemical, a corporation which was in danger of insolvency, precisely because the option to purchase the building was consideration for his accepting the assignment. *Chemical Dynamics*, 728 S.W.2d at 594. In the assignment, Chemical surrendered to Lawrence Newfeld "all the provisions and benefits of the lease." When the Newfelds subsequently purchased the property in 1973, they did so subject to the lease; and they acceded to the contractual rights of the original owners under the 1968 lease. Chemical accepted these contractual obligations with the Newfelds when it remained on the premises and abided by the terms of the 1968 lease by continuing to

pay rent pursuant thereto. Chemical was bound by the terms of the 1968 lease as to the Newfelds and later also as to H. Schultz because they were the new owners of the leased property. The Newfelds and H. Schultz were therefore entitled to enforce the holdover provision of the lease against Chemical when it remained in possession of the premises upon the termination of the lease in 1978.

Chemical counters, however, that the Newfelds and H. Schultz waived their claim for double rent under the 1968 lease. Chemical argues that the Newfelds and H. Schultz consistently asserted the theory of recovery that Chemical was a tenant under an alleged 1979 lease and that this theory is inconsistent with the theory under which the trial court granted recovery; namely, that Chemical was a holdover tenant under the 1968 lease.

A waiver is construed to mean an intentional relinquishment of a known right. *Lucas Hunt Village Co. v. Klein,* 358 Mo. 1054, 218 S.W.2d 595, 599 (banc 1949). To constitute an effective waiver, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal and decisive act of the party showing such purpose. *Id.* This act must be so consistent with and indicative of an intention to waive that no other reasonable explanation is possible. *Id.*

In the present case, the agreed stipulations and joint exhibits before the trial court made reference only to the 1968 lease. The Newfelds and H. Schultz's reply brief before the trial court plainly stated that they were viewing Chemical as a holdover tenant from March 1, 1978 through October 31, 1987 and that they were seeking double rent pursuant to the holdover provision of the 1968 lease. The Newfelds and H. Schultz evinced no clear intent to waive their claims under the 1968 lease.

The trial court did not err in concluding from the stipulated facts that Chemical was bound by the terms of the 1968 lease and in awarding the Newfelds and H. Schultz double rent in accordance with the holdover provision of that lease. Chemical's first point is denied.

In its second point, Chemical contends that the trial court erred in awarding prejudgment interest in the amount of $215,876.88.

Prejudgment interest is a measure of damages for failure to pay money when money is due. *Solter v. P.M. Place Stores Co., Inc.,* 748 S.W.2d 919, 922 (Mo.App. 1988). Interest prior to judgment is allowable if the claim is liquidated. An amount is liquidated for the purpose of allowing prejudgment interest thereon if the amount is readily ascertainable according to recognized standards. *Id.*

In the present action, the Newfelds and H. Schultz sought back rent and prayed for whatever additional order or relief the trial court deemed just in the circumstances. *See Stern Fixture Co. v. Layton,* 752 S.W.2d 341, 343 (Mo.App.1988). The back rent from March 1, 1978 to May 31, 1987 was calculated as 110 months at $3,230.78 for a total of $355,385.80. Clearly, the principal due the Newfelds and H. Schultz was a liquidated amount. The trial court did not err in awarding prejudgment interest.

We agree with Chemical, however, that the trial court erred in computing the amount of interest due. The Newfelds and H. Schultz concede the interest awarded should have been $195,916.42 because the trial court erroneously considered months after May 31, 1987 in calculating the amount of interest. On appeal, this court may enter the judgment the trial court should have entered. Rule 84.14. We therefore reduce the prejudgment interest award to $195,916.42, resulting in a judgment in the total amount of $551,302.22.

The judgment is affirmed as modified.

PUDLOWSKI, P.J., concurs.

KAROHL, J., concurs in result only.