INCENTIVE REALTY, INC., d/b/a De-
velopment Services, Plaintiff/Ap-
pellant/Cross–Respondent,

v.

Amer HAWATMEH and Your Cup Run-
neth Over, Inc., Defendants/Respon-
dents/Cross–Appellants.

Nos. 72713, 73037.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 13, 1998.

Rehearing Denied Jan. 19, 1999.

Allen P. Press, St. Louis, for appellant.

Uthoff, Graeber, Bobinette & O'Keefe, Charles W. Bobinette, St. Louis, for respondent.

Devereux, Murphy, Striler, Brickey & Sher, L.L.C., St. Louis, for Amicus Curiae.

PUDLOWSKI, Presiding Judge.

This appeal and cross appeal arise out of a transaction involving the Nantucket Cove restaurant located in the Interco Tower. ZML–Clayton Limited Partnership (ZML) owns the Interco Tower. Defendant Amer Hawatmeh (Hawatmeh) is the majority

shareholder and president of Your Cup Runneth Over, Inc. (Your Cup). Your Cup owns and operates Nantucket Cove. Your Cup purchased the restaurant assets from a third party and leases the space from ZML. Plaintiff, Incentive Realty, Inc., d/b/a Development Services (Development Services) is a real estate and business broker licensed in Missouri.

Development Services appeals the dismissal with prejudice of count I of its amended petition. We reverse and remand on count I. Development Services's breach of contract (count II) and quantum meruit claims (count III) proceeded to trial. Defendants Hawatmeh and Your Cup cross-appeal the jury verdict and subsequent judgment entered in favor of Development Services. We affirm.

In count I of their amended petition Development Services sought to establish they were entitled to attorney's fees under the Commercial Real Estate Brokers and State Certified Real Estate Appraisers Lien Act (CREBLA), Section 429.600 et seq. RSMo. (1993).[1]

 In review of a dismissal for failure to state a claim we must determine if the facts pleaded, viewed in the light most favorable to the pleader, demonstrate any basis for relief. *San Luis Trails Association v. E.M. Harris Building Co.*, 706 S.W.2d 65, 67 (Mo.App. E.D.1986). We accept as true all facts asserted in the petition and construe all allegations in plaintiff's favor. *Id.* A petition is not to be dismissed for failure to state a claim if any set of facts is alleged which, if proved, would entitle plaintiff to relief. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc.1988).

We recite the facts as set out in Development Services's amended petition. At all relevant times there was in effect a law known as CREBLA, Section 429.600 et seq. Development Services was, at all relevant times, a real estate broker for purposes of CREBLA. In the spring of 1995, Hawatmeh went to Development Services seeking assistance in the purchase or lease of real estate and businesses. On April 25, 1995, Hawatmeh and Development Services executed a

one year written "Buyer's Exclusive Agency Employment Contract." Pursuant to this agreement, Hawatmeh retained Development Services as his exclusive agent for the purpose of locating real property and assisting in the negotiation of terms and conditions for the purchase or lease of such property. Hawatmeh then incorporated Your Cup, which ratified his agreement with Development Services and became its majority shareholder. Development Services was to be paid 3% of the purchase or lease price for any property introduced to Hawatmeh by Development Services which Hawatmeh eventually contracted to buy or lease. Subsequently, Development Services represented Hawatmeh in the purchase and lease of various buildings and businesses.

Hawatmeh informed Development Services that he was interested in acquiring a restaurant. After fruitless efforts, Development Services introduced Hawatmeh to the availability of the Nantucket Cove restaurant and space in July of 1995. Nantucket Cove is located on the first floor of the Interco Tower in Clayton. The Interco Tower is owned by ZML. On August 31, 1995, Your Cup, through Hawatmeh, took control of the operation, possession and management of the Nantucket Cove restaurant. Hawatmeh also needed office space and commenced possession of Suite 1430 in the Interco Tower. The Nantucket Cove restaurant space and Suite 1430 are "commercial real estate" for purposes of CREBLA. Hawatmeh refused to pay Development Services a commission for the restaurant and office lease transactions and Development Services made demand upon Hawatmeh pursuant to the employment contract.

On October 23, 1995, Development Services recorded a claim for lien on the Interco Corporate Tower after giving notice to ZML, Hawatmeh and Your Cup pursuant to CREBLA. Your Cup and ZML entered into a written assignment of the lease for the restaurant space on December 4, 1995. The next day, Your Cup took over rental of Suite 1430. On February 6, 1996, Development Services timely filed its original petition seeking relief under CREBLA. Develop-

---

1. All statutory references herein are to RSMo (1993).

ment Services sought payment of commissions, foreclosure of its lien, and recovery of its attorney's fees. At the end of February, Hawatmeh and Your Cup paid the commission owed in satisfaction of the lien. On March 11, 1996, the trial court ordered Development Services to release its lien and Development Services did so. ZML then moved to dismiss Development Services's count I claim for attorney's fees for failure to state a claim. Hawatmeh and Your Cup joined in ZML's motion. ZML, Hawatmeh and Your Cup argued Development Services never had a valid lien under CREBLA, and that under CREBLA, they were the "prevailing parties" entitled to recover their attorneys' fees in the defense of count I. On April 4, 1996, the trial court entered an order dismissing Development Services's claim for attorney's fees and ordering Development Services to pay Hawatmeh and Your Cup's, and ZML's attorneys' fees. On April 15, 1996, Development Services amended its petition seeking attorney's fees from only Hawatmeh and Your Cup under CREBLA.

Count I

■ The trial court judgment on May 7, 1997, dismissed with prejudice count I of Development Services' petition. Judgment was entered on July 17, 1997 in favor of defendants Hawatmeh and Your Cup for $8,080.75, and defendant ZML, in the amount of $6,836.31. Development Services alleges the court erroneously applied CREBLA, and that it is entitled to attorney's fees from Hawatmeh and Your Cup. Because ZML and Development Services never entered into a written owner/broker agreement Development Services does not meet the statutory requirement based upon a lease of commercial real estate and, therefore, judgment awarded to ZML for attorney's fees is affirmed.

Development Services argues that when Hawatmeh and Your Cup satisfied the lien it became the "prevailing party" for purposes of CREBLA Section 429.625. and, therefore, was entitled to attorney's fees. In a proceeding to enforce a lien filed pursuant to Section 429.600 et seq., the costs, including reasonable attorney's fees and prejudgment interest "shall be paid by the nonprevailing

party or parties." Section 429.625. Determining which, if any, of the parties are "prevailing" and entitled to legal fees requires analysis of CREBLA.

Interpretation of CREBLA is an issue of first impression for our review. The CREBLA generally provides a lien in favor of real estate brokers "in such commercial real estate in the amount of the compensation as agreed upon by the real estate broker and the real estate broker's client or customer." Section 429.605.1. Section 429.605 authorizes a lien in favor of three categories of real estate brokers: listing brokers, seller's brokers, and buyer's brokers. This case involves a buyer's broker and the applicable section of CREBLA states:

2. A real estate broker shall, also, have a lien on such commercial real estate or an interest in such commercial real estate if the real estate broker has a written agreement with a prospective buyer to represent the buyer to the purchase or other conveyance to the buyer of commercial real estate when the real estate broker becomes entitled to compensation pursuant to the written agreement.

Section 429.605.2.

■ Review of the dismissal of Count I requires an examination of the phrase, "purchase or other conveyance to the buyer." Does it encompass leases, or does it apply solely to purchases of commercial real estate? In order to answer these questions we must ascertain the intent of the legislature through consideration of the plain and ordinary meaning of the words used in the statute and each word should be given meaning. *Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337 (Mo. banc 1993). Statutory liens should be construed liberally in favor of the lien claimant. *Brownstein v. Rhomberg–Haglin and Associates, Inc.*, 824 S.W.2d 13, 15 (Mo. banc.1992). In Section 429.605.2 the legislature specified a "purchase" or "other conveyance" as the transactions creating a lien. The legislature need not have included "other conveyance" if the lien was intended to be limited to purchases of commercial real estate. The question then becomes whether a lease is a "conveyance" of an interest in real estate.

■ Missouri courts have recognized the dual nature of a lease as being both a contract and a conveyance. *Newfeld v. Chemical Dynamics,* Inc., 784 S.W.2d 240, 242 (Mo.App. E.D.1989). As between the lessor and lessee, a lease creates a contractual relationship, privity of contract, as well as being a conveyance of an estate in land which creates privity of estate. *Id.* The court in *Newfeld* further recognized a lease as a species of contract which creates an estate in the land. *Id.* Missouri courts generally regard a lease as a conveyance or grant for a limited term of an estate in real property. *Detling v. Edelbrock,* 671 S.W.2d 265, 267 (Mo. banc. 1984). We find that a lease is a conveyance and, therefore, CREBLA, Section 429.605.2, authorizes the imposition of a lien on the lessee's interest in commercial real property in the case of a lease of real estate. It is clear that the legislature intended "other conveyance" to include leases. Development Services had a lien on the leasehold interest pursuant to Section 429.625.2 as a result of its written agreement with Hawatmeh to represent him to the purchase or other conveyance of commercial real estate.

■ To be enforceable, Development Services's lien had to attach to the real estate in accordance with CREBLA Section 429.609. Section 429.609(2)(c) states:

If the real estate broker has a written agreement with a prospective buyer as provided in subsection 2 of Section 429.605, then the lien attaches when the prospective buyer purchases or otherwise accepts a conveyance or transfer of the commercial real estate and records a notice of the lien within ninety days after the purchase or other conveyance or transfer to the buyer....

Hawatmeh and Your Cup took possession of Nantucket Cove in early August, 1995. On October 23, 1995, less than ninety days after Hawatmeh and Your Cup took possession, Development Services recorded its notice of lien. The notice caused Development Services's lien to attach to Nantucket Cove pursuant to Section 429.609.

■ The only remaining issue is whether Development Services's action to enforce the lien was timely filed. Section 429.616 states that "the broker claiming such lien must commence proceedings within six months after recording the lien...." Development Services filed its action on February 6, 1996, less than three months after the notice of lien was recorded. Hawatmeh and Your Cup claim the action is time barred pursuant to Section 429.620 which provides, in part, that "if a broker claiming a lien...fails to file a suit to enforce the lien...within thirty days after a properly served written demand of the owner...the lien shall be extinguished." Hawatmeh and Your Cup argue that such demand was served on October 26, 1995, and that Development Services's claim is barred because it was brought more than thirty days thereafter. This argument is without merit because Section 429.620 applies when there is a demand on the broker to "file a suit to enforce the lien." In this case, the demand was that Development Services "release" its lien. There is no provision in CREBLA that required Development Services to file its action within thirty days of a demand to release its lien. Development Services brought its action within six months of recording the notice of lien and,therefore, its action was timely filed.

We conclude that Development Services timely filed and stated a claim for relief against Hawatmeh and Your Cup for attorney's fees under CREBLA. We reverse and remand on Count I.

Following the court's dismissal of count I of Development Services's amended petition, the case proceeded to trial on counts II and III. Counts II and III were claims for commission allegedly owed Development Services on the sale of assets portion of the Nantucket Cove transaction. A jury verdict, under the alternative theories of implied contract and/or quantum meruit, found Hawatmeh and Your Cup responsible for a $7,185 commission. On May 15, 1997, judgment was entered in accordance with the jury verdict. Hawatmeh and Your Cup filed a joint motion for judgment notwithstanding the verdict and motion for new trial on June 13, 1997. The joint motion was denied on August 6, 1997. Hawatmeh and Your Cup argue on cross-appeal that the trial court erred

in denying: (1) their motion for judgment notwithstanding the verdict and (2) their motion for new trial. We affirm.

 Under Missouri law jury verdicts will be overturned only if there is a total absence of probative facts to support the verdict. *King v. Unidynamics Corp.*, 943 S.W.2d 262 (Mo.App. E.D.1997). Viewed in the light most favorable to the verdict, the record on appeal reveals that on April 25, 1995, Hawatmeh and Development Services (by its President Judy Smith) executed a one-year written "Buyer's Exclusive Agency Employment Contract." Hawatmeh retained Development Services as his "exclusive agent for the purpose of locating real property and to assist in negotiating terms and conditions for the purchase or lease thereof…." Development Services was to be paid a 3% commission of the sale or lease price. The written contract made no provision for compensating Development Services for assisting in the purchase of restaurant assets.

Development Services informed Hawatmeh of the Nantucket Cove restaurant opportunity. The seller of Nantucket Cove was offering to sell only the restaurant assets. Hawatmeh was interested and asked Development Services to represent him in the asset purchase. Development Services prepared a series of offers for the restaurant asset purchase. Each of these offers stated that Hawatmeh and Your Cup were responsible for fees due Development Services.

A sales agreement between the owner of the Nantucket Cove assets and Hawatmeh was entered on July 27, 1995 and set to close on August 31, 1995. The agreement stated that Hawatmeh was responsible for fees due Development Services. In early August 1995, Hawatmeh commenced possession of Nantucket Cove pursuant to a management contract with the seller. Hawatmeh promised that he would "take care of" Development Services's fee on the closing date. A few weeks later Hawatmeh told Development Services to take a back seat and that lawyers would handle the deal.

The Nantucket Cove asset sale did not close on August 31, 1995, as originally planned. In September of 1995, Hawatmeh remained in possession of the restaurant, terminated his management contract with the seller of Nantucket Cove, and agreed to retain all profits and be liable for all debts of Nantucket Cove. Development Services's commissions on the lease and asset transactions had not been paid and it filed a notice of broker's lien on October 23, 1995.

The sale of the assets of Nantucket Cove did not occur until December 20, 1995, and the final sale price was $239,995.58. Development Services filed suit against Hawatmeh on February 6, 1996, seeking its 3% commission. On February 28, 1996, Hawatmeh satisfied the broker's lien by paying Development Services 3% of the lease price of the real estate, but refused to pay commission for the asset sale transaction. Hawatmeh contended Development Services was paid in full under the terms of the written contract. The jury, on instructions of implied contract and quantum meruit, awarded Development Services $7,185 which was 3% of the Nantucket Cove asset sale price. This cross-appeal by Hawatmeh and Your Cup followed.

In their first point, Hawatmeh and Your Cup contend the trial court erred in denying their judgment notwithstanding the verdict. Hawatmeh and Your Cup allege Development Services failed to make a submissible case on either implied contract or quantum meruit because the April 25, 1995, written employment contract was the entire agreement and Development Services was paid in full.

 When reviewing a trial court's ruling on a motion for judgment notwithstanding the verdict (J.N.O.V.), we view the evidence and all reasonable inferences derived from it in the light most favorable to the party opposing the motion. *King v. Unidynamics Corp.*, 943 S.W.2d 262, 267 (Mo. App. E.D.1997). A motion for J.N.O.V. presents the question whether, at the close of all evidence, plaintiff made a submissible case. *Id.* A case is not to be submitted to a jury unless each and every fact essential to liability is predicated upon legal and substantial evidence. *Id.* We do not supply missing evidence or give the plaintiff the benefit of unreasonable inferences. *Beelman River*

*Term. v. Mercantile Bank*, 880 S.W.2d 903, 907 (Mo.App. E.D.1994). Determining whether there is sufficient evidence to submit an issue to the jury is a legal question and not an exercise of judicial discretion. *Koszor v. Ferguson Reorganized S.D. R–2*, 849 S.W.2d 205, 207 (Mo.App. E.D.1993).

The written contract was limited to the purchase or lease of real property. The contract did not mention locating restaurant assets, but Hawatmeh and Your Cup later requested Development Services do so. Development Services was involved in securing the sale of assets as well as the lease space of the Nantucket Cove. Hawatmeh and Your Cup acknowledged, in the written offers and final sales contract, they would be responsible for fees due Development Services.

 Development Services argued at trial the sale of assets transaction created an implied contract. An implied contract arises when the broker's services are not offered gratuitously nor performed for some other person, but with the expectation of compensation from the recipient. *Kohn v. Cohn*, 567 S.W.2d 441, 447 (Mo.App.St.L.Dist.1978). The threshold question is whether the parties intended their agreement to be a final and complete integration. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 811 (Mo.App. E.D.1992). Hawatmeh and Your Cup argue the contract was final and complete and that Development Services was paid in full. The April 25, 1995, employment contract is silent as to the purchase of assets, but Hawatmeh and Your Cup later requested Development Services perform that work. The parol evidence rule does not apply to written agreements which are not completely integrated. *Id.* Development Services was entitled to use parol evidence to exemplify Hawatmeh and Your Cup impliedly agreed to pay a 3% commission on the restaurant assets purchase.

The evidence viewed in the light most favorable to the verdict indicates that the written contract was not the parties' final and complete agreement, and that Hawatmeh and Your Cup impliedly promised to pay a 3% commission on their purchase of the Nantucket Cove restaurant assets. We find the case was submissible on the implied contract

theory and, therefore, the alternative theory of quantum meruit need not be considered. *Elsberry v. Boulevard Motors, Inc.*, 886 S.W.2d 732, 736 (Mo.App.1994). Point Denied.

In their second point, Hawatmeh and Your Cup contend the trial court erred in denying their motion for a new trial because: (1) the court erred in instructing the jury on implied contract (Instruction number 6) and (2) the court erred in instructing the jury on quantum meruit (Instruction number 7).

 We will not reverse for error in jury instructions unless prejudice is shown. *Dierker Associates, D.C., P.C. v. Gillis*, 859 S.W.2d 737, 748 (Mo.App. E.D.1993). There is no MAI instruction for implied in fact contract cases seeking commission on the sale of assets. Instruction number 6 was derived from the statement of law in *Kohn.* Hawatmeh and Your Cup erroneously argue that MAI Instruction 29.02 should be used when a real estate broker is entitled to a commission under either an express or implied contract. We find that the trial court's implied contract instruction was not prejudicial error, and that MAI Instruction 29.02 applies to express agreements. The trial court properly instructed the jury on the implied contract elements required to render a verdict in favor of Development Services. Point Denied.

Hawatmeh and Your Cup next argue that the trial court erred in giving Instruction number 7 on quantum meruit to the defendants prejudice in that: (1) plaintiff pled and tried its case on breach of express contract; (2) plaintiff failed to make a submissible case on quantum meruit and (3) the instruction fails to properly hypothesize facts which required the jury to find that plaintiff and defendants had an agreement that plaintiff's work be compensated for its extra services. Instruction number 7 was patterned after MAI 26.05 and *Williams v. Enochs*, 742 S.W.2d 165, 169 (Mo. banc.1987). The instruction directed the jury to find for Development Services on the quantum meruit action if they believed:

(1) Development Services furnished the brokerage services to Amer Hawatmeh

and Your Cup regarding the sale of Nantucket Cove, (2) Hawatmeh and Your Cup accepted the services and (3) Hawatmeh and Your Cup purchased the restaurant as a direct result of Development Services's activity;

Unless you believe Development Services is not entitled to recover by reason of Instruction 8.

Instruction 8 provides that the jury's finding must be for the defendants under Instruction 6 and 7 if they believe:

First, Plaintiff and Defendants agreed that Plaintiff would receive three percent (3%) of the lease price of the real estate rented by Defendants at the Interco Corporate Tower as its compensation for all services provided by Plaintiff to Defendants on the Nantucket Cove transaction mentioned in the evidence; and

Second, Plaintiff has been paid its compensation in full.

■■■ Here the ultimate facts were accurately submitted. *See Williams v. Enochs*, 742 S.W.2d 165 (Mo. banc 1997). The instructions properly informed the jury that a claim for quantum meruit under an implied contract does not require the existence of an express agreement between the parties. *See Estate of Holtmeyer v. Piontek*, 913 S.W.2d 352, 355 (Mo.App. E.D.1996). The jury concluded from the instructions that Development Services was entitled to recover. We cannot discern any prejudice form the submission of Instruction 7 and we deny Hawatmeh and Your Cup's point.

The litigants have appealed to this court for an award of attorney's fees. After a review of the motions we deny their applications. The judgment as to Count I pertaining to Amer Hawatmeh and Your Cup Runneth Over, Inc. is reversed and remanded. The judgment as to ZML–Clayton Limited in Count I is affirmed and Counts II and III are affirmed.

CRANDALL and AHRENS, JJ., concur.