COMMERCE BANK OF KANSAS
CITY, N.A., Appellant,

v.

MISSOURI DIVISION OF FINANCE,
et al., Respondents.

No. WD 40050.

Missouri Court of Appeals,
Western District.

Oct. 18, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 29, 1988.
As Modified Nov. 29, 1988.

---

William H. Sanders, Karl Zobrist, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jerry B. Buxton, Asst. Atty. Gen., Jefferson City, for respondents.

Before COVINGTON, J. *Presiding,* and NUGENT and GAITAN, JJ.

COVINGTON, Judge.

Commerce Bank of Kansas City, N.A. (Bank), appeals from an order entering summary judgment in favor of the Missouri Division of Finance (Division) in the Bank's action for a declaratory judgment. The judgment is reversed.

The Division is an administrative agency charged with administration of the Missouri Consumer Finance Act, §§ 408.-100–.210, RSMo 1986.[1] The Bank is a national banking association organized under federal law. As a member of both the VISA and MasterCard credit card networks, the Bank issues credit cards to consumers in Missouri and other states. This case involves a controversy between the Bank and the Division regarding the interpretation of statutes relating to bank credit card interest rates, in particular §§ 408.100 and 408.200.3(3).

In 1986 the Bank sought the Division's permission to institute an overall interest charge for credit card services at a uniform rate of 18 percent per annum on the outstanding balance, regardless of the total balance outstanding. The Bank relied on § 408.100, which in 1985 was amended to permit higher interest rates on most small loans. *Infra.* Prior to 1985, credit card loans yielded a higher interest rate under § 408.200.3(3) than under § 408.100. The Division's position was and remains that interest rate limitations on lender originated credit cards are exclusively governed by § 408.200.3(3), *infra;* consequently, the Division denied the Bank's request. The Bank then filed a petition for declaratory judgment in the Circuit Court of Jackson County that §§ 408.100 and 408.200 be construed together in determining interest rates to be charged for credit card services. Each party filed motions for summary judgment. The trial court entered summary judgment in favor of the Division.

The Bank alleges that the trial court erred in holding that § 408.200.3(3) sets the mandatory and exclusive interest rate limitations for all credit card loans.

The Bank first contends that the plain language of the relevant statutes permits issuers of credit cards to charge the rates permitted under § 408.100 so long as § 408.200.1 is not violated.

Section 408.100 provides:

This section shall apply to all loans which are not made as permitted by other laws of this state except that it shall not apply to loans which are secured by a lien on real estate, nonprocessed farm products, livestock, farm machinery or crops or to loans to corporations. On any loan subject to this section, any person, firm, or corporation may charge, contract for and receive interest in any manner at rates which shall not exceed the following:

(1) On so much of the unpaid principal balance as does not exceed twelve hundred dollars, two and two hundred eighteen thousandth percent per month;

---

1. All statutory references are to RSMo 1986 unless otherwise noted.

(2) On so much of the unpaid principal balance as exceeds twelve hundred dollars, one and sixty-seven one-hundredths percent per month.

Interpretation of § 408.200 is at issue. Subsection 1 of § 408.200 states:

> Except as provided in subsections 2 and 3, no lender shall permit any borrower to be indebted to such lender on two or more contracts at any time for the purpose or with the result of contracting for or receiving more interest on the multiple notes or contracts than would have been permissible on a single note or contract entered into in accordance with section 408.100. It shall be lawful for a lender to lend at the same or different times to the same borrower twelve hundred dollars or less under and at the rates permitted by section 408.100 and additional amounts at not more than one and sixty-seven one-hundredths percent per month even though such additional amounts bring the aggregate amount outstanding to an amount in excess of twelve hundred dollars and whether such loan or loans be evidenced by one or more than one note or loan contract.

The remainder of this section provides that where the obligation is evidenced by one note or loan contract, it shall be treated as one loan with interest to be computed at the rates permitted under § 408.100.

Under § 408.200.1, the lender must "aggregate" and treat as one all loans made to the same borrower for purposes of computing the allowable interest.

Exceptions to the aggregation rule of § 408.200.1 are contained in subsections 2 and 3. Subsection 2 defines the terms "closed end credit," "credit card," and "open end credit." Section 408.200.3 specifies:

> 3. For the purpose of computing the interest allowed on any loan contract of the following types, each note or loan contract shall be considered separately without regard to any other loan to the same borrower, the provisions of subsection 1 notwithstanding:
>
> (1) Closed end credit contracts evidencing loans in the principal amount of two thousand five hundred dollars or more for the purchase of goods or services pursuant to a single contract of purchase in an amount equal to or exceeding the amount of the loan;
>
> (2) Open end credit contracts other than contracts under which a credit card has been issued, provided that if a lender has more than one such contract with any borrower all such contracts shall be considered together (but without regard to contracts of any other type) for purposes of computing the interest allowed on loans made thereunder;
>
> (3) Open end credit contracts under which a credit card has been issued; provided, however, interest on any such contract shall not exceed twenty-two percent per annum on that part of the unpaid balance which is not in excess of one thousand dollars and ten percent per annum on the remainder.

The Bank contends that § 408.200.3(3) provides that a credit card transaction will be exempted from aggregation only if the interest rates charged are within the interest limits set out in subsection 3(3). If the limits in subsection 3(3) are exceeded, the loan will be subject to aggregation under § 408.200.1 to insure that the limits of § 408.100 are not exceeded. The Division takes the position, however, that § 408.200.3(3) is a mandatory interest rate limitation on all credit card transactions.

Both the Division and the Bank contend that the language of the statute is clear and unambiguous. Each cites the rule of statutory interpretation which states that legislative intent is to be derived from the actual language of the statute without reference to extrinsic aids except in cases of ambiguity. *State ex rel. Maryland Heights Fire Protection Dist. v. Campbell*, 736 S.W.2d 383, 387 (Mo. banc 1987).

The language of the statute, however, is not unambiguous. The portion of § 408.200.3(3) which begins with "provided, however" may be interpreted either as a conjunction or as a condition. The Division contends that "provided, however" means "and." In support, the Division cites *State ex inf. McKittrick v. Murphy*, 347 Mo. 484,

148 S.W.2d 527 (banc 1941), where the court interpreted the term as a conjunction in order to achieve what the court believed to be the overall intent of the legislation.

▮ The words "provided, however" may also be interpreted as a proviso which must be regarded simply as a qualification of an exception (§ 408.200.3) to a statute (§ 408.200.1), which itself is a limitation on the application of § 408.100, the general interest rate law. A proviso is generally confined to the clause or distinct portion of a statute which immediately precedes it or to which it pertains. 82 C.J.S. *Statutes* § 381(b)(2) (1953). A proviso does not enlarge or separately confer power or introduce independent legislation. *Id.* at § 381(b)(3). "The natural and appropriate office of a proviso is to create a condition precedent; to except something from the enacting clause; to limit, restrict, or qualify the statute in whole or in part; or to exclude from the scope of the statute that which otherwise would be within its terms." 73 Am.Jur.2d *Statutes* § 318 (1974) (footnotes omitted). Without more, therefore, the "provided however" language is not enough to support the Division's position that the legislature intended § 408.200.3(3) to be a mandatory limitation of interest on all credit cards.

When faced with an ambiguity in the law, it is appropriate for a court to "consider the history of the legislation, the surrounding circumstances and the ends sought to be accomplished." *Kieffer v. Kieffer*, 590 S.W.2d 915, 918 (Mo. banc 1979).

Prior to 1975, § 408.100 applied only to loans of $500 or less. Section 408.200, which addressed the subject of aggregation, listed no exceptions for credit card loans or other transactions.

In 1974 the General Assembly adopted a provision specifically directed to credit cards under the Retail Credit Sales Act (§§ 408.250–.370) which limited credit cards to interest rates below those allowed for loans under § 408.100. The threatened enforcement of these restrictions caused several banks to file a declaratory judgment action to determine the proper credit card rate permitted under state law.

In *United Missouri Bank of Kansas City, N.A. v. Danforth*, 394 F.Supp. 774 (W.D.Mo.1975), the Court found that the activities of small loan companies competed with bank credit card operators in that both classes of lenders extended credit for the purpose of purchasing retail goods and services. *Id.* at 783. The Court then noted that 12 U.S.C.A. § 85 allowed national banks to charge the highest rate of interest permitted to competing lenders on similar loans, notes or other evidence of debt. *Id.* Given the competitive nature of the relationship, the Court concluded that the national banks should be permitted to charge the rates of interest authorized by § 408.100. *Id.* at 785.

Section 408.200 was next amended in 1977. The then existing section was designated subsection 1 and was modified to exempt certain types of transactions from the requirement that all loans to the same lender be aggregated. Subsection 2 was added in substantially its current form. Finally, subsection 3 was added, which read in part as follows:

> Notwithstanding subsection 1, each note or loan contract of the following types shall be considered separately for purposes of computing the interest allowed on loans made under such contract and it shall be lawful to charge the rates permitted by subsection 1 and section 408.100 on each such contract without regard to any other loan to the same borrower:
>
> . . . .
>
> (3) Open end credit contracts under which a credit card has been issued.

No provision limiting credit card interest was adopted.

In 1979 the legislature modified § 408.100 to raise the applicable limits of small loans and to establish a two-tiered interest rate. Section 408.200.1 was modified to reflect the increased rates of interest provided under § 408.100. In addition, subsection 3(3) was amended to add the emphasized portion as follows:

(3) Open end credit contracts under which a credit card has been issued; *provided, however, interest on any such contract shall not exceed twenty-two percent per annum on that part of the unpaid balance which is not in excess of one thousand dollars and ten percent per annum on the remainder.*

The legislative intent behind the 1979 amendment to § 408.200.3(3) is not clear. The change appears only in the last version of Senate Bill 305, so that a comparison with prior drafts of the Bill is not possible.

In 1985 the General Assembly amended § 408.100, increasing the rate of interest which could be charged upon the first $1,200 (rather than $800) of any loan to 2.218 percent per month. It further provided that on the balance over $1,200, the lender could charge 1.67 percent per month with no upper limit. (Prior to 1985 the rates available under § 408.100 were restricted to $2,500; thereafter the general interest rate at § 408.030 (then 10 percent) applied.) Section 408.200.1 was similarly modified to reflect the rate changes in § 408.100.

In support of its contention that the interest rate contained in § 408.200.3(3) is mandatory, the Division has submitted an affidavit of Representative James N. Riley who presided over the deliberations leading to the 1979 amendment. Missouri courts have refused to accept testimony or affidavits of legislators in determining what was intended by specific legislation. *Pipe Fabricators, Inc. v. Director of Revenue,* 654 S.W.2d 74, 76 (Mo. banc 1983). The court is bound by what the General Assembly actually said, not by what it supposedly intended to say. *Id.* This is true, however, only if the statute is unambiguous. *Missouri Dir. of Employ. Sec. v. Labor & Indus. Rel.,* 637 S.W.2d 315, 318 (Mo.App. 1982).

Because there is ambiguity in the statute, Representative Riley's affidavit has been considered. According to the affidavit, Senate Bill 305, the precursor of the present statute, was being considered by the House Consumer Protection Committee when it was drawn to Representative Ri-

ley's attention that an increase in interest rates under § 408.100 would also have the effect of increasing allowable interest rates for credit cards. He instructed another representative and a legislative aide to draft an amendment to the bill which would decrease the amount of interest on credit cards. After later discussion of the bill, the Committee decided to limit the credit card rates to an amount equivalent to the interest rates allowed by § 408.100 prior to the current amendment, basing such proposed limits on what was considered an average credit card loan of $750. The legislative intent, according to Representative Riley, was to establish a lender originated credit card rate not to exceed 22 percent per annum on the first $1,000 and 10 percent per annum on the remaining balance of the loan.

Statements of representatives concerning the intention of the statute, although entitled to some weight where they are consistent with the statute and other legislative history, are not controlling in determining legislative intent. *Redd v. Federal Land Bank,* 661 F.Supp. 861, 863 (E.D.Mo.1987), *aff'd,* 851 F.2d 219 (8th Cir. 1988). But for the affidavit, nothing in the legislative history supports the Division's contention that § 408.200.3(3) contains a mandatory interest rate for all credit card loans. In 1977 credit card transactions were exempted from the aggregation requirement of § 408.200.1. Interest rate limits for credit cards were controlled through § 408.100. Prior to 1979 credit card interest was controlled by § 408.100. Section 408.200 served as merely a qualification of the application of § 408.100.

The Division argues that considerable deference should be given to its interpretation of the statute because of the Division's expertise in the administration of laws pertaining to financing, to financial devices in the small loan area, and to interest rates for small loans, as well as the circumstances resulting in the enactment of those laws. Where the meaning of a statute is uncertain, the interpretation and construction given to it by an agency charged with its administration is entitled to great weight.

*Foremost–McKesson, Inc. v. Davis,* 488 S.W.2d 193, 197 (Mo. banc 1972). Although considered by the court, the Division's interpretation is not controlling. A court is charged with analyzing the statute and must disregard an agency interpretation where it appears wrong. *State ex rel. Danforth v. European Health Spa, Inc.,* 611 S.W.2d 259, 264 (Mo.App.1980).

A statute must be read in conjunction with other statutes on similar subject matters, and the statutes should, if possible, be harmonized as a whole. *ITT Canteen Corp. v. Spradling,* 526 S.W.2d 11, 16 (Mo. 1975). Taken as a whole, the provisions of the Act reveal that § 408.100 generally governs interest rates and § 408.200.3(3) does not establish a separate rate for credit card loans. The purpose of § 408.200 is to qualify the application of § 408.100 in cases involving multiple loans. Section 408.110, for example, states: "Sections 408.120 to 408.190 shall apply only to loans made under section 408.100, and shall be known as the 'Consumer Finance Act.'" No reference is made to loans under § 408.200. Consequently, § 408.200 does not appear to set an independent interest rate, but only to qualify the application of § 408.100 where there are two or more loans to the same borrower.

Section 408.140, which prohibits lenders from imposing additional charges other than those specifically described in connection with a loan, applies only to loans made under § 408.100 pursuant to the wording of § 408.110, *supra.* If § 408.200.3(3) sets an independent and exclusive interest rate for credit cards, then annual fees on credit cards would be permissible. Yet, the Division's position in years past has been that credit card issuers in Missouri are prohibited from charging annual fees to card holders. It would follow from this reasoning that if banks cannot charge annual fees for their credit cards, then their loans are subject to § 408.100 and not 408.200.3(3); and, if credit card loans are governed exclusively by § 408.200.3(3), then banks may charge annual fees.

Similarly, § 408.150 provides penalties for violations of the Act and is expressly limited in scope to §§ 408.100–.190. If credit card interest rates are separately regulated under § 408.200.3(3), then there is no applicable state penalty provision for charging excessive interest.

Section 408.190 states, "Sections 408.120 to 408.180 and *408.200* shall not apply to any loan on which the rate or amount of interest charged or received is lawful without regard to the rates permitted in section 408.100." (emphasis added) If the interest rates for credit card loans are governed exclusively by § 408.200.3(3) without regard to the interest rates of § 408.100, then § 408.190 means, in effect, that credit card loans are exempt from the very provision that purports to regulate them. "Courts must give effect to statutes as they are written, and presume that the legislature intended a logical result, not an absurd or unreasonable result." *State ex rel. Lebeau v. Kelly,* 697 S.W.2d 312, 315 (Mo.App.1985).

The Division relies upon the rule of construction which provides that when a specific statute and a general statute each address the same subject matter, the specific statute prevails. *Dover v. Stanley,* 652 S.W.2d 258, 263 (Mo.App.1983). Section 408.100 is a general statute regarding applicable interest rates for most small loans. Section 408.200.1 then generally requires the lender to aggregate all loans made to the same borrower for the purpose of computing interest. Section 408.200.3, however, excepts three categories of loans to be considered separately without regard to any other loan to the same borrower, the provisions of subsection 1 notwithstanding. Finally, subsection (3) of § 408.200.3, is directed specifically to open-end credit contracts under which a credit card has been issued. The Division argues that because § 408.200.3(3) refers specifically to credit card loans and is a subsection of the mandatory nonaggregation provision, the interest rates contained in § 408.200.3(3) should prevail over the rates contained in § 408.100.

The rule of *Dover v. Stanley,* however, assumes a repugnancy between the statutes. "[W]here one statute deals with a subject in general terms and another in specific terms, the two should be harmonized when reasonable; but to the extent of any discord between them, the definite

statute prevails." *Bartley v. Special School Dist.*, 649 S.W.2d 864, 867 (Mo. banc 1983). Reading § 408.200.3(3) as a qualified exception to a limitation on the application of the general interest rate law is consistent with the legislative history of the Act and with the application of the other statutes of the Act. Such an interpretation does not create any repugnancy between § 408.200.3(3) and § 408.100. Therefore the general-special dichotomy is inapplicable.

The Division further contends that, because usury statutes are remedial in nature, they must be given broad effect and construed so as to eliminate the evil they were designed to address. *State ex rel. LeFevre v. Stubbs*, 642 S.W.2d 103, 106 (Mo. banc 1982). The legislature, however, has not indicated that § 408.200.3(3) was ever meant to be a free-standing interest rate schedule. If the legislature had intended to set a separate credit card interest rate, it could have done so. The legislature has in other circumstances set forth mandatory, independent interest rates. *See, e.g.,* § 408.232 (second mortgage rates); § 408.300 (retail credit sales "time charges"); § 408.450 (variable interest rates). The Division's interpretation, if accepted, would require holding that a mandatory credit card interest rate is buried at the end of an exception to a qualification of the statute.

Sections 408.100 and 408.200 should be construed together. Open end credit contracts under which a credit card has been issued are subject to the general interest rate provisions of § 408.100 and the aggregation requirement of § 408.200.1. To avoid the aggregation requirement, the lender may charge interest at a rate not to exceed the rates contained in § 408.200.3(3).

The judgment is reversed and remanded for entry of judgment in accordance with this opinion.

All concur.