**UNION ELECTRIC COMPANY, Respondent,**

v.

**CITY OF JACKSON, Missouri, Appellant.**

**No. 57046.**

Missouri Court of Appeals, Eastern District, Southern Division.

May 29, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1990.

Application to Transfer Denied July 31, 1990.

Mark E. Gardner, Kelly D. Collins, Springfield, for appellant.

James F. Waltz, Cape Girardeau, Trudi Foushee, St. Louis, for respondent.

CRIST, Judge.

The City of Jackson (City) appeals a summary judgment in favor of plaintiff Union Electric (U.E.) on Count I of its two-count suit against the City, Boyd and Donna Langford, and Gregory and Nancy Pleimann. As for the Langfords and Pleimanns, the summary judgment enjoining them from removing U.E.'s poles and equipment from their respective properties has become final because they did not appeal. As for the City of Jackson, the trial court's order enjoining them from providing electrical service to the ·Pleimanns and Langfords is reversed.

The Langfords and Pleimanns were residential electric customers of U.E. The Langfords' property was annexed by the City on December 20, 1982. The Pleimanns' property was annexed on January 18, 1988. Both the Pleimanns and the Langfords requested electrical service from the City's municipally owned and operated power plant. U.E. objected and asserted it was entitled to continue service pursuant to § 393.106.2, RSMo 1986, i.e., the "anti-flip-flop" law. During the spring of 1988, the Langfords and Pleimanns disconnected their electrical service from U.E. They were then connected to the City's system by poles and equipment newly installed by the City.

U.E., in Count I of its petition, sought to enjoin the City of Jackson from providing the Pleimanns and Langfords with electricity. U.E. also sought to enjoin the two property owners from removing U.E.'s poles and equipment from the properties claiming an easement by adverse possession. Count II was a claim against the City for tortious interference with U.E.'s contract to provide service to the Pleimanns and Langfords. No summary judgment was issued as to Count II while Count I was certified for review pursuant to Rule 74.01(b).

The trial court's order permanently enjoined: (1) the City from providing electrical service to the Langfords and Pleimanns unless ordered otherwise by the Public Service Commission (P.S.C.); (2) the Langfords and Pleimanns from removing from their property U.E.'s poles and equipment; and (3) the Langfords and Pleimanns from "interfering with the provision of electricity" by U.E. unless otherwise ordered by P.S.C.

■ Because the Pleimanns and Langfords did not appeal, we must first decide if the City may appeal points one and three of the order enjoining City from serving the Pleimanns and Langfords and prohibiting the Pleimanns and Langfords from interfering with U.E.'s provision of electricity.

■ An appealing defendant may complain of error committed against a non-appealing co-defendant if the error prejudices the rights of the appealing defendant. *Grommet v. St. Louis County*, 680 S.W.2d 246, 250[1] (Mo.App.1984). Here, the City is aggrieved by the order compelling the Langfords and Pleimanns to receive electricity from U.E. The trial court's orders prohibiting the City from providing power to the two non-appealing co-defendants who are in turn compelled to receive power from U.E., are "inextricably related" as they affect the City. A finding that the City has the right to sell electricity to the Pleimanns and Langfords would defeat any claim by U.E. that the property owners must continue to receive power from it. The City has standing to appeal both orders. *Id.* at 251.

We now address the substance of this appeal. U.E. claims it is entitled to provide electricity to the Langfords and Pleimanns based on the "anti-flip-flop" laws, §§ 393.-106 and 394.315, RSMo 1986. The "anti-flip-flop" laws were enacted in 1982 to further restrict competition for existing electrical customers. Section 394.315 refers to rural electric cooperatives. Section 393.106 refers to electrical corporations and joint municipal utility commissions. *See Missouri Public Service Commission v. Platte–Clay Electric Cooperative, Inc.*, · 700 S.W.2d 838, 841 (Mo. banc 1985). Section 393.106.2 provides:

Every electrical corporation ... shall be entitled to continue to supply retail electric energy to persons at structures at which service is being provided on August 13, 1986. Notwithstanding any

other provision of the law to the contrary, no electrical corporation or joint municipal utility commission shall be permitted ... to supply retail electric energy to any person at a structure where said person is receiving, or has within the last sixty days received, retail electric energy from another supplier of electrical energy. Provided, however, that the commission may order otherwise after a finding that a change of suppliers is in the public interest for a reason other than a rate differential.

In applying § 393.106 to this conflict between a municipality and an electrical corporation, we ask two questions: (1) who is prevented from supplying electricity to the Pleimanns and Langfords; and (2) who is entitled to provide power to the Pleimanns and Langfords. The first question focuses on sentences two and three of § 393.106.2. The second question applies to sentence one.

I. *Who is prevented from supplying electricity to the Pleimanns and Langfords under § 393.106, RSMo 1986?*

■ Nothing in the "anti-flip-flop" laws prohibits a city from providing power to a customer already receiving power. The second sentences of §§ 393.106.2 and 394.-315.2 prevent rural electric cooperatives, electrical corporations and joint municipal utility commissions from providing electricity to one presently receiving or who has received power in the last sixty days.

A municipally owned and operated power plant is not, by definition, a joint municipal utility commission under §§ 393.700–.770, RSMo 1986 because those sections envision a separate governmental body created by agreement between municipalities or water districts. Neither is a municipality an "electrical corporation" formed under Chapter 351 RSMo. § 393.010, RSMo 1986. Finally, a municipality is not formed under Chapter 394, RSMo and is therefore not a rural electric cooperative.

As additional support for our conclusion, we look to sentence three of § 393.106.2 which requires approval of the P.S.C. be-

fore suppliers can be changed. We note this sentence is particularly important in this case because the trial court's order required P.S.C. approval before the City could serve the landowners.

The words "[p]rovided however" in the statute are a proviso relating to the immediately preceding clause. *Commerce Bank of Kansas City, N.A. v. Missouri Department of Finance,* 762 S.W.2d 431, 434[1] (Mo.App.1988). Here, sentence three provides an exception to the prohibition against a change of suppliers if the P.S.C. approves. However, because sentence two does not mention municipalities, we cannot presume P.S.C. approval is necessary before the City provides power to the Pleimanns and Langfords. In fact, the contrary conclusion is suggested.

It is well established that the P.S.C. has, to date, no regulatory power over municipally owned and operated utilities. *State ex rel. City of Sikeston v. Public Service Commission of Missouri,* 336 Mo. 985, 82 S.W.2d 105, 111[9] (1935); *Missouri Public Service Commission v. City of Trenton,* 509 S.W.2d 770, 775[5] (Mo.App.1974); *State ex rel. Mitchell v. City of Sikeston,* 555 S.W.2d 281, 289[8] (Mo.1977). Nothing in the "anti-flip-flop" laws changes that general rule.

Section 393.106 does not prohibit the City of Jackson from providing the Pleimanns and Langfords with electricity. *See Unity Light and Power Company v. City of Burley,* 83 Idaho 285, 361 P.2d 788 (1961). Neither does it require P.S.C. approval before a change of suppliers can be made. Therefore, the trial court's orders requiring P.S.C. approval before the landowners are served by the City were erroneous.

II. *Who is entitled to supply electricity to the Pleimanns and Langfords?*

■ The remaining provision upon which U.E. can prevent the City from supplying the landowners is the entitlement clause, sentence one. It states:

Every electrical corporation ... shall be entitled to continue to supply retail electric energy to persons at structures

at which service is provided on August 13, 1986.

§ 393.106.2, RSMo 1986.

In a dispute between a cooperative and a corporation, our supreme court found sentence one of § 394.315.2 was clear and unambiguous. *Missouri Public Service Company v. Platte–Clay Electric*, 700 S.W.2d 838, 842 (Mo. banc 1985). However, we must construe § 393.106.2 in light of the well-established express authority of cities to operate their own power plants. *Pace v. City of Hannibal*, 680 S.W.2d 944, 945 (Mo. banc 1984); *State ex rel. City of Sikeston v. Public Service Commission of Missouri*, 82 S.W.2d at 111[9–11]; *Missouri Public Service Commission v. City of Trenton*, 509 S.W.2d at 773.

The statute empowering the City of Jackson to provide electricity to its inhabitants is § 91.010, RSMo 1986. In relevant part it states:

> The city council of any city ... in this state shall have power ... to erect, purchase, acquire, maintain and operate ... power plants, electric light plants, ... or any other kind of plant or device for lighting purposes ... and to supply the inhabitants of such [city] ... [with] light, ... and power therefrom.

The two apparently inconsistent acts must be read so § 393.106 does not repeal § 91.010 by implication. *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864, 867[6] (Mo. banc 1983). We must harmonize the provisions of § 393.106 giving meaning to every clause. *Id.*

The entitlement provision of sentence one of § 393.106.2 does not give U.E. the right to prevent the City from providing electricity to its inhabitants. The legislature has chosen to delegate to the cities the authority to provide electricity to its inhabitants in § 91.010. It has also chosen not to expressly limit that delegation in the "anti-flip-flop" laws. The entitlement provision gives U.E. a right to provide power to those it served on August 13, 1986, insofar as the body against whom they assert that right is an electrical corporation, joint municipal utility commission or rural electric cooperative.

Union Electric asserts it is difficult to believe the legislature intended a different result in annexed areas depending on whether a city had a franchise with an electrical corporation as opposed to owning its own plant. Their argument misses the point.

Municipal utilities have traditionally been guided by different statutes and principles. Municipal water systems do not need P.S.C. approval before providing service beyond a city's boundaries. *Missouri Cities Water Company v. City of St. Peters*, 534 S.W.2d 38, 40 (Mo.1976) (exercising a delegation of power under §§ 250.190 and 250.240, RSMo 1969). Municipalities may also build their own electric plants without P.S.C. approval. *State ex rel. City of Sikeston v. Public Service Commission of Missouri*, 82 S.W.2d at 111. The entitlement provision, sentence one of § 393.106.2, does not prevent the City of Jackson from providing electricity to the Pleimanns and Langfords.

That part of the judgment enjoining the City from supplying electrical power to the Pleimanns and Langfords, and their receiving electrical power from the City is reversed.

SIMON, C.J., and CARL R. GAERTNER, J., concur.