**RISK CONTROL ASSOCIATES, INC., Relator–Respondent,**

v.

**Lewis E. MELAHN, Respondent–Appellant,**

**and**

**Professional Insurance Managers, Inc., Intervenor–Appellant.**

**No. WD 44527.**

Missouri Court of Appeals, Western District.

Dec. 24, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1992.

Application to Transfer Denied Feb. 25, 1992.

Joseph R. McMahon, Associate Gen. Counsel, Jefferson City, for respondent-appellant.

Thomas L. Williams, Roberts, Fleischaker & Williams, Joplin, for intervenor-appellant.

B.H. Clampett, Michael J. Cordonnier, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for relator-respondent.

Before TURNAGE, P.J., and KENNEDY and BRECKENRIDGE, JJ.

TURNAGE, Judge.

Risk Control Associates, Inc., (RCA), filed a Petition for a Writ of Prohibition in the Circuit Court of Cole County against Lewis Melahn, Director of the Division of Insurance, to prohibit Melahn from holding a hearing on a complaint filed by Professional Insurance Managers, Inc., (PIM), against RCA. The court entered judgment in prohibition by which Melahn was prohibited from holding a hearing.[1] Melahn and PIM contend that Melahn had jurisdiction of the PIM complaint.[2] Reversed.

RCA is a corporation formed under Chapter 383 for the purpose of providing medical malpractice insurance. PIM is an independent insurance agent which sold policies issued by RCA. On October 2, 1990, RCA wrote a letter to customers of PIM advising that as of the close of business on that day PIM was no longer authorized to sell or service RCA policies and that RCA had terminated its relationship with PIM. Subsequent thereto PIM filed a complaint with the Division of Insurance in which it alleged that RCA had terminated its contract with PIM without giving PIM the 90 days' notice required by § 375.033.1, RSMo Cum. Supp.1990. The complaint also alleged that RCA had engaged in an unfair trade practice in violation of § 375.934, RSMo 1986,[3] in the circulation of the letter.

After the filing of the complaint with the Division of Insurance, RCA filed a Petition for a Writ of Prohibition in the Circuit Court of Cole County alleging that it was not an insurance company subject to Chapter 375, but was a business entity formed under Chapter 383 and that the Division of Insurance had no jurisdiction to enforce provisions of Chapter 375 against it. The court found that the Division did not have jurisdiction over RCA and prohibited the Director from acting on the complaint.

Chapter 383 provides for the formation of business entities for the purpose of providing malpractice insurance upon the assessment plan. Section 383.025, RSMo

---

1. An appeal lies after the circuit court has preliminarily granted prohibition. *State ex rel. St. Louis County v. Missouri Com. on Human Rights,* 693 S.W.2d 173, 174[1] (Mo.App.1985).

2. PIM was allowed to intervene in this court and has filed a brief.

3. All sectional references are to RSMo 1986, unless otherwise indicated.

Cum.Supp.1990, provides that the business entity shall be a corporation and do business as a corporation.

Chapter 375 applies generally to all insurance companies. Sections 375.031 to 375.039 regulate the relationship between insurers and independent insurance agents. Section 375.031(4) defines insurer as any property and casualty insurance company doing business in the State of Missouri. Section 375.033.1, RSMo Cum.Supp.1990, provides that a contract between an insurer and an independent insurance agent shall not be terminated or canceled by an insurer except by mutual agreement or unless 90 days' written notice in advance has been given to the agent and the director of insurance.

■ The first question presented is whether RCA is an insurer within the meaning of that term as defined in § 375.-031(4). The answer to that question depends upon what insurance company the legislature intended to include when it defined insurer as any "property and casualty insurance company." Does it mean a company that writes both property and casualty insurance or does it mean a company that writes only property insurance or a company that writes only casualty insurance? It is apparent that the definition could refer to a company that writes either property or casualty insurance as well as a company that writes both types. The court in *Wolff Shoe Co. v. Director of Revenue*, 762 S.W.2d 29, 31[3–5] (Mo. banc 1988), states that the test to determine whether or not language used in a statute is ambiguous is whether the terms are plain and clear to one of ordinary intelligence. From the above it is apparent that the definition of insurer is ambiguous because more than one meaning may be attributed to the definition. When a statute is ambiguous it is proper to consider the ends sought to be accomplished. *Glanville v. Hickory County Reorganized School District No. 1*, 637 S.W.2d 328, 330[2–4] (Mo.App.1982).

■ The purpose of §§ 375.031 to 375.-039 is to protect independent insurance agents from termination by an insurer without notice and to protect policyholders

by permitting them to renew policies written by an independent agent for a period of one year from the date of termination within the underwriting requirements of the insurer. There is nothing in these sections which indicates that the protection given to agents and insureds is limited to any particular type of insurance. On the contrary, the title to Chapter 375 is "Provisions Applicable to All Insurance Companies." The title is a part of the act and may be considered as an expression of the general scope of the bill. *In re Tompkins' Estate*, 341 S.W.2d 866, 871[3, 4] (Mo.1960). This indicates the legislature intended the act to apply broadly to all companies.

■ It follows that the legislature intended Chapter 375 to cover all insurance companies and, in particular, it intended §§ 375.031 to 375.039 to protect independent agents from termination without notice by insurance companies that write either property or casualty insurance. Policyholders of insurance companies that write either type of insurance who have policies placed by independent agents need the protection of having ample time to make other arrangements for coverage if their independent agent is terminated by the company providing their coverage. There is nothing in Chapter 375 which indicates any intent to limit the protection of §§ 375.031 through 375.039 to companies that only write both property and casualty insurance as opposed to companies that write either property or casualty insurance.

■ Considering the fact that Chapter 375 applies to all insurance companies and the fact that independent agents and policyholders of all companies need the protection of §§ 375.031 through 375.039, this court construes the definition of insurer to mean any company which writes only property insurance and any company which writes only casualty insurance. In other words the definition includes companies which write either property or casualty insurance.

■ Casualty insurance is not defined by statute, but in 13 Appleman, Insurance Law and Practice, § 7481 (Rev.1976), casu-

alty insurance is treated as liability insurance which indemnifies the insured against the consequences of negligence resulting in injury to another. RCA writes insurance which insures against liability incurred for medical malpractice. That is a typical policy of casualty insurance. As a company writing casualty insurance, RCA is included in the definition of insurer contained in § 375.031(4) and its agents and policyholders are entitled to the protection of §§ 375.031 through 375.039.

RCA presents a number of arguments as to why it is not included in the definition of insurer. RCA urges that it is simply a business entity and thus does not fit the definition of insurer. However, RCA overlooks the fact that § 383.025 provides that RCA shall do business as a corporation. Thus, RCA is a corporation and not merely a business entity. RCA admits that it is organized to provide malpractice insurance. As shown above, RCA qualifies as a casualty insurance company.

RCA further argues that under the rule of expressio unius est exclusio alterius a company organized under Chapter 383 is not subject to the provisions of Chapter 375. This argument is based on the fact that § 383.030.1 gives the Director of Insurance authority under § 375.171 and § 375.173 to examine into the affairs of any association organized under the provisions of § 383.010 to § 383.040. The argument proceeds that by mentioning only certain sections in Chapter 375, § 383.030 excludes the applicability of any other section in Chapter 375 to RCA. In *Springfield City Water Co. v. City of Springfield*, 353 Mo. 445, 182 S.W.2d 613, 618[3] (1944), the court stated that the maxim relied on by RCA is "a mere auxiliary rule of construction" which must be applied with caution. The court quoted from *Ford v. United States*, 273 U.S. 593, 611, 47 S.Ct. 531, 537, 71 L.Ed. 793 (1927), in its discussion of the maxim as follows:

[O]nly when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment.

The mention of some sections of Chapter 375 in § 383.030 does not meet the above requirement for the application of the maxim. There is not such a strong contrast between what is expressed and what is omitted which would lead to the conclusion that the legislature intended that no other sections of Chapter 375 would apply to a company formed under Chapter 383.

■ RCA also filed with the trial court an affidavit from a member of the Senate concerning the legislative history of Chapter 383. RCA relies upon this as the legislative history which shows that the legislature did not intend Chapter 375 to apply to companies formed under Chapter 383. In *Commerce Bank v. Mo. Div. of Finance*, 762 S.W.2d 431, 435[2] (Mo.App.1988), this court held that statements of representatives concerning the intention of the statute are entitled to some weight where they are consistent with the statute but are not controlling in determining legislative intent. The statements in the affidavits are not consistent with the language of the statute and are therefore disregarded.

■ Under the definition of insurer in § 375.031(4), RCA was subject to the requirement of § 375.033.1 that it give 90 days' notice to PIM before it terminated PIM's agency. Therefore, the Director had jurisdiction under § 375.037.1 to entertain PIM's complaint and to determine whether there had been a violation of § 375.033.1. The court erred in entering judgment in prohibition to prohibit the Director from entertaining the complaint.

■ Count II of the complaint filed by PIM with the Director alleged a violation of § 375.934 which prohibits any person from engaging in any trade practice which is defined in § 375.930 to § 375.948 as an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Section 375.932(3) defines the word "person" as including all companies organized, incorporated or doing business under Chapter 383.

Section 375.936(4) includes within prohibited unfair practices in the insurance business false information placed before the public in a letter. The complaint alleges RCA made false statements in the letter of October 2, 1990. By the express language of § 375.932(3), RCA, as a company organized and incorporated under Chapter 383, is subject to the provisions of § 375.930 to 375.948 relating to unfair competition and deceptive practices. For that reason the Director had jurisdiction to entertain Count II of the complaint of PIM.

The Director had jurisdiction to entertain both counts of PIM's complaint. The judgment is reversed and this cause is remanded with directions to enter judgment in favor of the Director of the Division of Insurance and deny the Petition for Writ of Prohibition.

All concur.