**PROFESSIONAL INSURANCE MANAGERS, INC., and G. Stephen Beimdiek, Plaintiffs–Appellants,**

v.

**RCA MUTUAL INSURANCE COMPANY (formerly known as Risk Control Associates, Inc.), Defendant–Respondent.**

No. 19145.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 19, 1994.

Motion for Rehearing and Transfer to Supreme Court Denied Sept. 13, 1994.

Application to Transfer Denied
Oct. 25, 1994.

John C. Cozad, Anne C. Wilson, Tristan L. Duncan, Morrison & Hecker, Kansas City, for plaintiffs-appellants.

B.H. Clampett, Michael J. Cordonnier, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for defendant-respondent.

GARRISON, Judge.

Professional Insurance Managers, Inc., (PIM) and G. Stephen Beimdiek (Beimdiek) (collectively referred to as Appellants) filed a complaint with the Missouri Director of Insurance pursuant to § 375.037[1] alleging statutory violations by RCA Mutual Insurance Company (RCA). This appeal follows a review of the Director's decision by the circuit court.

RCA is a corporation providing medical malpractice insurance. PIM is an independent insurance agency which, pursuant to an arrangement beginning in 1984 or 1985, sold policies issued by RCA.[2] Beimdiek is an officer and employee of PIM and is also licensed by the State of Missouri as both an insurance agent and broker. Both PIM and Beimdiek claim an entitlement to commissions as a result of renewal of RCA policies sold by them as independent insurance agents.

On October 2, 1990, RCA sent a letter to Appellants stating that:

[Y]our relationship as agent/broker for Risk Control Associates, Inc.[3] is hereby

---

1. All references to statutes are to RSMo 1986, V.A.M.S.

2. All parties to this appeal treat the relationship as one controlled by a contract although it was not reduced to writing.

3. This was RCA's former name.

terminated at the close of business this date, October 2, 1990.

We will no longer accept any business from Beimdiek Insurance Agency or its companion company, Professional Insurance Managers, Inc.

On the same day, RCA sent the following letter to its insureds whose policies had been sold by Appellants:

As a policyholder of Risk Control Associates, it is necessary that you be informed that the Board of Directors has terminated the company's relationship with Beimdiek Insurance Agency, d.b.a. Professional Insurance Managers, Inc., as its brokers and agents as of the close of business October 2, 1990. After this date, Professional Insurance Managers, Inc., will no longer be authorized to sell or service Risk Control Associates' policies.

Please be assured that this will in no way affect your relationship with Risk Control Associates.

Within the next few days to weeks, one of our authorized brokers or agents will be contacting you to assure you of continuing service as a member of Risk Control Associates.

Appellants filed a complaint with the Missouri Department of Insurance alleging that RCA had violated (1) § 375.033 by purporting to terminate their independent insurance agency contract without giving 90 days' advance written notice and by refusing to permit them to service existing RCA insureds during the required notice period; (2) § 375.035 by not permitting the RCA policies which they had sold to be renewed for a period of one year from the date of termination and to pay commissions on those renewals; and (3) § 375.936(4) by engaging in an unfair trade practice by publishing untrue, deceptive or misleading statements in the letters sent to their customers.[4]

After a hearing, the Director of the Missouri Department of Insurance (Director) issued Findings of Fact and Conclusions of Law on November 12, 1992, concluding that RCA had violated §§ 375.033 and 375.035 but not § 375.936(4). He found that "RCA failed to give the notice required in section 375.033(1), RSMo to the Petitioners"; "RCA

**4.** The pertinent portions of those and related statutes are as follows:

Section 375.033.
1. All contracts between an insurer and an independent insurance agent in effect in the state of Missouri on or after September 28, 1979, shall not be terminated or canceled by the insurer except by mutual agreement or unless ninety days' written notice in advance has been given to the agent and the director of insurance.
2. During the ninety days' notice period the independent insurance agent shall not write or bind any new business on behalf of the insurer without specific written approval.
Section 375.035.
1. Any insurer in this state shall, upon termination or cancellation of an independent insurance agent's contract, permit the renewal of all contracts of insurance written by the independent insurance agent for a period of one year from the date of termination, as determined by the underwriting requirements of the insurer. . . .
2. Any insurer renewing contracts of insurance in accordance with this section shall pay commissions for the renewals to the terminated or canceled independent insurance agent in the same amount and manner as paid to the independent insurance agent under the terminated or canceled contract.

. . . .
Section 375.934.
It is an unfair trade practice for any insurer to commit any practice defined in section 375.936 if:
(1) It is committed in conscious disregard of sections 375.930 to 375.948 or any rules promulgated under sections 375.930 to 375.948; or

. . . .
Section 375.936.
Any of the following practices, if committed in violation of section 375.934, are hereby defined as unfair trade practices in the business of insurance:

. . . .
(4) **"False information and advertising generally"**, making, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any insurer in the conduct of his insurance business, which is untrue, deceptive or misleading;

. . . .

failed to pay Petitioners commissions for the insurance policies it renewed for Petitioners' customers pursuant to section 375.035, RSMo."; and "RCA did not violate section 375.936(4) because the letters it sent out do not contain any false, deceptive or misleading information." His decision states, in pertinent part:

> Based on my conclusions that RCA has violated sections 375.033 and 375.035, RSMo, RCA shall issue a letter of cancellation to the Petitioners which shall state that the cancellation of its relationship with the Petitioners was effective January 2, 1991. In the same letter, RCA shall inform the Petitioners which of Petitioners' policyholders it renewed during the time period from October 2, 1990 to January 2, 1992. RCA shall then inform the Petitioners of the amount of renewal commission due for each of the Petitioners' policyholders during that same time period. RCA shall then remit the total renewal commission to the Petitioners plus interest at the statutory rate from January 3, 1992. RCA shall have thirty days from the effective date of this decision to comply with this decision.

Both sides sought judicial review of the Director's decision. Appellants seek our review following entry of the circuit court's "Judgment Affirming Decision of Director of Insurance." [5]

Appellants raise three points on this appeal: (1) the finding that RCA did not conduct unfair trade practices by stating in the letters that their relationship had been terminated on October 2, 1990 and that they had no authority to sell or service RCA policies was contrary to the weight of the evidence and inconsistent with the decision that RCA violated § 375.033; (2) the method of termination of their relationship and remittance of renewal commissions ordered by the Director constituted a retroactive cancellation of their contract in excess of his authority; and (3) the Director's decision ordering RCA to pay Appellants interest on the renewal commissions only from January 3,

1992 was an abuse of discretion and contrary to Missouri law.

On appeal from the trial court's review of an administrative agency's decision, we review the decision of the administrative agency, not the judgment of the trial court. *Clark v. Reeves*, 854 S.W.2d 28, 31 (Mo.App. W.D.1993). We are to affirm the administrative decision unless its findings are: in excess of statutory authority or jurisdiction of the agency; unsupported by competent and substantial evidence upon the whole record; unauthorized by law; arbitrary, capricious or unreasonable; an abuse of discretion; or any of the other specific grounds stated in § 536.-140. *Snelson v. Board of Police Commissioners*, 859 S.W.2d 794, 797 (Mo.App.E.D. 1993). When the agency's decision is based on its interpretation of the law, the reviewing court must exercise an unrestricted, independent judgment and correct the agency's erroneous interpretations. *Burlington Northern Railroad v. Director of Revenue*, 785 S.W.2d 272, 273 (Mo. banc 1990).

Appellants' complaint in their first point relates to the Director's finding that RCA's statements in its letters were not untrue, deceptive or misleading and that it did not, therefore, engage in unfair trade practices prohibited by §§ 375.934 and .936. Appellants rely on § 375.936(4) and argue that RCA's October 2, 1990 letters to its insureds contained two false, deceptive and misleading statements. First, they argue that the statement that RCA's relationship with Appellants had been terminated as of October 2, 1990 was false. They point to the fact that pursuant to § 375.033.1, a termination could occur only after a 90–day written notice. Since such notice was not given prior to October 2, 1990, they contend that the relationship was not lawfully terminated on that date and any statement to the contrary was false.

Secondly, they contend that the statement in the letter that PIM "will no longer be authorized to sell or service [RCA] policies"

---

5. RCA sought the circuit court's review of that portion of the Director's findings holding that it had violated § 375.033 by failing to give 90 days' advance notice of the termination and § 375.035

by failing to pay commissions on renewal of its policies sold by Appellants. It does not pursue those contentions on this appeal.

was also false, deceptive and misleading. They argue that there had been no termination because of the failure to comply with the notice requirements of § 375.033.1, and that, in any event, under § 375.033.2 the only thing an agent was prohibited from doing during a 90–day notice period prior to termination was writing or binding "new business" on behalf of the insurer in the absence of specific written approval. They argue, therefore, that they had a statutory right to service their customers and insurance contracts for 90 days after an effective notice of termination. Specifically, they argue that "new business" does not include renewal of existing policies and that they were entitled to renew such policies even during a 90–day notice period.[6] Appellants also point to the fact that § 375.035 requires an insurer to permit the renewal of all insurance contracts written by the agent for a period of one year from the date of termination and to pay the agent renewal commissions on that business.

RCA argues that § 375.936(4) does not apply in the instant case because it is meant to protect members of the public purchasing insurance or otherwise dealing with persons engaged in the insurance business and not agents/brokers in their dealings with insurers. It cites no Missouri authority reaching that conclusion. *Risk Control Associates, Inc. v. Melahn,* 822 S.W.2d 531, 536 (Mo.App. W.D.1991), a case involving these parties and arising from this same dispute, indicates but does not decide that § 375.936(4) may be applicable to the instant case. Because we resolve this point on another basis, however, we do not decide this issue.

RCA also argues that the letters did not violate § 375.936(4) because the statements were not "untrue, deceptive or misleading." It theorizes that the statements that RCA had terminated Appellants' relationship with it, as well as their authority to represent it,

on October 2, 1990 were factually correct because they were based on the contents of RCA's letter to Appellants. The Director determined, however, that under the circumstances of this case, RCA violated § 375.033.1 by failing to give a 90–day advance notice of termination. This finding was affirmed by the circuit court and RCA has acceded to it by not pursuing it on this appeal. The effect is that, in the instant case, while the statements contained in the letters to the insureds may have been factually consistent with the letter to Appellants, they were based upon what has been determined to be a violation of § 375.033.1. This determination amounted to a finding that the contract between the parties could not be terminated except on 90 days' advance notice. The effect of this finding is that RCA, while it may have said it was terminating its relationship with Appellants immediately, was not entitled to do so. Section 375.936(4) prohibits not only "untrue" statements but also those which are "deceptive or misleading." Even if the statements in the letters to the insureds were factually true by correctly describing what RCA attempted to accomplish by its letter to Appellants, the effect of the Director's decision was that the truth of those statements, as they related to termination of the contract between RCA and Appellants, resulted from and depended on a violation of § 375.033.1.[7] To this extent they were untrue and misleading, and the Director's decision was in error. We affirm the decision with regard to the claim of unfair trade practices, however, for other reasons which follow.

Section 375.934 declares it to be an unfair trade practice to commit the practices defined in § 375.936, if "committed in conscious disregard" of §§ 375.930–.948. Appellants argue that RCA's statements were in conscious disregard of the proscriptions of the

---

6.  RCA, in effect, agrees with this premise when it states in its "Statement Of Facts" that one of the reasons for its dissatisfaction with PIM was that "PIM was not producing any new business—renewals only," thus appearing to distinguish between new business and renewals of existing policies. RCA also distinguishes between "new business" and the addition of physicians as additional insureds under existing policies. For instance, its president testified that in 1990 there

were 25 new physicians and surgeons insured through the efforts of PIM but 11 of those "were additions to current policies already in effect and hardly come under the category of a new sale."

7.  We need not reach and do not decide any issue about whether the statements were untrue or misleading as they may relate to termination of the power of the agent to act.

statute because everyone is presumed to know the law, citing *Harkey v. Mobley,* 552 S.W.2d 79, 81 (Mo.App.S.D.1977), and *Farmers & Merchants Bank of Eureka v. Boland,* 175 S.W.2d 939, 947 (Mo.App.E.D.1943). That principle is correct as a general statement but is insufficient to supply the necessary element of "conscious disregard" in the context pertinent to this case.

The phrase "conscious disregard" has been variously described by Missouri courts, usually in the context of tort actions involving claims for punitive damages. In *Evans v. Illinois Central Railroad Co.,* 289 Mo. 493, 233 S.W. 397, 400 (banc 1921), the court said:

> As we understand the words "conscious disregard of the life and bodily safety," they add nothing to the words "willful, wanton and reckless," and are included within the meaning of those words. As applied to an act, they necessarily mean that such act was intentionally done without regard to the rights of others, and in full realization of the probable results thereof.

"Conscious" is defined in *Webster's Third New International Dictionary* 482 (1976) as "perceiving, apprehending, or noticing with a degree of controlled thought or observation: recognizing as existent, factual, or true"; "subjectively perceived: personally felt"; "involving rational power, perception, and awareness: embodying consideration and decision." The same source, at page 655, defines "disregard" as "intentional slight or neglect."

Appellants contend that the Director's finding that there was no violation of § 375.936(4) was inconsistent with his conclusion that RCA did violate § 375.033.1 by failing to give 90 days' notice of its intention to terminate the relationship between them. The finding that RCA violated the notice requirements of § 375.033.1, however, does not require a finding that a contrary statement contained in the letters was made with conscious disregard of the provisions of § 375.936(4).

In the instant case, we are referred to no evidence before the Director which would satisfy the necessary element of "conscious disregard" with reference to the untrue or misleading statements contained in the letters, and our review of the record has revealed none. The result reached by the Director with reference to this point was correct, albeit for the wrong reasons. We do not find, therefore, that any of the reasons for a reversal specified in § 536.140 exist. This point is denied.

In their second point, Appellants contend that the method of cancellation and remittance of commissions on renewals ordered by the Director amounts to a retroactive cancellation of the relationship which is outside the authority and jurisdiction of the Department of Insurance. Appellants refer to that portion of the Director's finding which made the termination of their contract effective January 2, 1991.

The effect of this decision was to treat the October 2, 1990 letter as commencing the 90–day notice period for termination of their relationship as required by § 375.033.1; to treat January 2, 1991 as the effective date of that termination; and to require RCA to provide an accounting of commissions for renewals which occurred between October 2, 1990 and January 2, 1992 (one year following the date the Director concluded was the effective date of the termination).

Appellants argue that pursuant to § 375.037, the Director did not have authority to retroactively treat the October 2, 1990 letter as the commencement of the 90–day notice period. They point to the language of that section which states that upon a determination that § 375.033 has been violated, "the director shall notify all parties concerned by certified mail and shall prescribe a method of cancellation to be followed by the concerned parties." They argue that the words "to be followed" are prospective in nature and that if the termination had not previously occurred in accordance with § 375.033, the Director was limited to prescribing a cancellation to occur at a future date. Having failed to do so in the instant case, they theorize that the Director's decision in that regard was in error and contend that we should reverse and order the Director to prescribe a method of cancellation to be followed by RCA at a future time.

■ In construing a statute, we are to ascertain the true intention of the legislature, giving it a reasonable interpretation in light of the legislative objective. *Collins v. Director of Revenue*, 691 S.W.2d 246, 251 (Mo. banc 1985). In the instant case, we are not cited to any Missouri authority directly in point which interprets either § 375.033.1 or .037. The purpose of §§ 375.033.1 and .037, however, "is to protect independent insurance agents from termination by an insurer without notice and to protect policyholders by permitting them to renew policies written by an independent agent for a period of one year from the date of termination within the underwriting requirements of the insurer." *Risk Control Associates, Inc. v. Melahn*, 822 S.W.2d at 534. This purpose was served by the Director's decision in that it gave effect to RCA's expressed intent to terminate its relationship with Appellants and also gave Appellants the benefit of the notice period and renewal commissions to which they were entitled under the statute. To adopt Appellants' argument would be to permit them to receive commissions on renewals since October 2, 1990 and continuing to some point in the future, even though RCA's letter of that date clearly indicated an intent to terminate the relationship, albeit incorrectly specifying the date when it would take effect.

■ Section 375.037 clearly indicates the grant of discretion to the Director in determining the method to be followed in effecting the cancellation of an insurer's relationship with an independent insurance agent. The provision that the Director "shall prescribe a method of cancellation to be followed by the concerned parties" does not necessarily indicate an intent by the legislature that none of the action taken prior to the Director's decision would be effective or that all relevant actions must occur thereafter. Rather, it could refer to the fact that the method of cancellation to be followed by the parties shall thereafter be specified by the Director. This is consistent with the interpretation obviously placed on the statute by the Director in the instant case. This point is, therefore, denied.

Appellants' final point relates to that portion of the Director's decision requiring the payment of interest on renewal commissions owing which stated: "RCA shall then remit the total renewal commission to the Petitioners plus interest at the statutory rate from January 3, 1992." Appellants contend that this portion of the decision was contrary to § 375.035 which requires an insurer to permit renewal of all contracts of insurance written by the terminated independent insurance agent for a period of one year from the date of the termination and to pay commissions on such renewals in the same amount and manner as under the terminated contract.

According to the evidence in the instant case, prior to the attempted termination on October 2, 1990, RCA paid renewal commissions on the 15th day of the month following the month in which the renewal premiums were received. Pursuant to § 375.035, the renewal commissions following termination would be owed in the same manner. Appellants, therefore, argue that the Director's decision permits RCA to avoid interest on renewal commissions from the time they were due until January 3, 1992.

We agree with Appellants' contention in this regard. Even though, as argued by RCA, § 375.037 does not specifically authorize the Director to require the payment of interest, it does, as noted earlier in this opinion, permit the Director to determine the "method of cancellation to be followed by the concerned parties."

■ The purpose of prejudgment interest is to compensate for the failure to pay a liquidated amount when due. *Solter v. P.M. Place Stores Co., Inc.*, 748 S.W.2d 919, 922 (Mo.App.W.D.1988). An amount is sufficiently liquidated for the purpose of allowing prejudgment interest if it is readily ascertainable by computation according to a recognized standard. *Id.* There was no issue in the instant case about the amount owed for renewal commissions. To permit RCA to avoid paying interest at the statutory rate on renewal commissions from the day they were owed under the prior contract between the parties would be to permit RCA to benefit from its violation of §§ 375.033 and .035.

■ Inasmuch as the Director found that RCA had violated § 375.035 by failing to pay

commissions for the insurance policies it renewed for Appellants' customers from October 2, 1990 to January 2, 1992 (a holding which RCA does not contest), we hold that the Director had authority to order the payment of interest on the renewal commissions owed. That part of the Director's decision, however, which requires the payment of interest only from January 3, 1992 must be reversed.

The Director's decision ordering RCA to pay interest on renewal commissions commencing January 3, 1992 is reversed and RCA is hereby ordered to pay interest on the renewal commissions, at the statutory rate, from the 15th day of the month following the month in which renewal premiums were received for the RCA policies sold by Appellants which were renewed between October 2, 1990 and January 2, 1992. In all other respects, the Director's decision is affirmed.

PREWITT and CROW, JJ., concur.